**Elaine M. ORR, Plaintiff-Appellee,**

v.

**FRANK R. MacNEILL & SON, INC.,
Defendant-Appellant.**

**No. 73–3063.**

United States Court of Appeals,
Fifth Circuit.

April 10, 1975.

Christian D. Searcy, Alan G. Greer, Ray H. Pearson, Miami, Fla., for defendant-appellant.

Robert W. Hervey, Coral Gables, Fla., for plaintiff-appellee.

Before JONES, THORNBERRY and COLEMAN, Circuit Judges.

JONES, Circuit Judge:

In a trial before the court without a jury, Elaine M. Orr recovered judgment against Frank R. MacNeill & Son, Inc., in an action for damages from sex discrimination in compensation as an employee. It has appealed.

The appellant is a rather large insurance agency in Miami, Florida. In the findings and conclusions of the District Court it is stated that:

> "Two persons are the driving forces in the defendant corporation, Frank R. MacNeill, nearly 88, who still spends at least three to four hours per working day in the office, and his son, Malcolm MacNeill, the vice president of the corporation, who testified that he is in charge of the operations of the

company. The plaintiff claims that the senior MacNeill told her to come talk with him if she ever had any problems and that he was still running the show."

Notwithstanding Mrs. Orr's claim that the senior MacNeill said that he was "running the show," the events demonstrate that Malcolm MacNeill was the operating head of the agency with respect to the fixing of Mrs. Orr's compensation.

The appellee, Elaine M. Orr, went to work for the agency in 1952, it then had four employees. At the end of 1970, the critical time in this controversy, there were over forty employees. In and after 1967 the organization consisted of four departments, Fire Insurance, Casualty Insurance, Claims and Accounting.

John F. Bruns, the head of the Fire Insurance Department, was originally employed by MacNeill as a Special Agent or Field Representative. He continued in that capacity after becoming a Vice President and Manager of the Fire Insurance Department. In addition to his General Supervisory activities in the Fire Insurance Department, his duties included handling the underwriting of the Fire Insurance Department and approving or disapproving fire risks. His primary responsibility and activity was the production of business. Bruns contacted agents, collected overdue accounts, and sought to develop new business for the agency. Upon one or more occasions Bruns established commission arrangements with a company represented by the agency. Malcolm MacNeill testified that this "takes a lot of savvy."

The Casualty Insurance Department was in charge of James Moore. He was responsible for underwriting the Casualty Insurance business which was acceptable to the company. This responsibility specifically involved reviewing policies written by agents or instructing someone in the department to underwrite acceptable business. When an agent had a risk which he thought might not be acceptable to the company, the agent and Moore would discuss it, and Moore would decide whether or not to accept the risk. His job, as in the case of Bruns, required decision making and the exercise of discretion.

The Claims Department was handled through a separate corporation which was a wholly owned subsidiary of Frank R. MacNeill & Son, Inc. It was in charge of Thomas B. Rogan. He was responsible for assigning all claims work which came into the office, for adjusting and settling claims, and for supervising, hiring, firing, and training approximately ten professional adjusters and ten clerical workers. Rogan had unlimited draft authority with several insurance and casualty companies represented by the agency. He issued loss drafts upon determining that claims should be paid. He assisted in the development of new business. His job, like those of Bruns and Moore, required the making of decisions and the exercise of discretion.

Elaine M. Orr was head of the Accounting Department. She kept the financial and other records, she and others signed checks, she purchased supplies and supervised the maintenance of the building which housed the agency. She was sometimes consulted by those in other departments but usually with respect to accounting matters.

The salaries paid to the four department heads for the years 1966 through 1970, as found by the District Court, were as follows:

| As of April | FIRE BRUNS | CASUALTY MOORE | CLAIMS ROGAN | ACCOUNTING ORR |
|---|---|---|---|---|
| 1966 | $10,400.00 | $ 8,996.00 | $ 9,100.00 | $10,400.00 |
| 1967 | 11,310.00 | 10,010.00 | 10,010.00 | 11,700.00 |
| 1968 | 15,002.00 | 10,816.00 | 14,001.00 | 12,012.00 |
| 1969 | 15,522.00 | 12,012.00 | 15,600.00 | 13,000.00 |
| 1970 | 18,018.00 | 14,040.00 | 18,018.00 | 14,040.00 |

For the years 1969 through 1971 bonuses were paid as follows:

| For the year | BRUNS | MOORE | ROGAN | ORR |
|---|---|---|---|---|
| 1969 | $ 1,000.00 | 500.00 | 500.00 | 500.00 |
| 1970 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 |
| 1971 | 3,500.00 | 2,500.00 | 3,500.00 | 1,500.00 |

Mrs. Orr has informed this court that the correct salary figures for 1967 are Bruns $15,002, Rogan $14,001 and Orr $12,012. It does not appear that any effort was made to have the court's findings corrected.

It was the testimony of Mrs. Orr, credited by the District Court although in conflict with the testimony of the elder MacNeill, that she had several discussions with him about her compensation. In 1967 she complained to him that Bruns had gone ahead of her in salary. He told her, so she said, that his son would not approve of her making as much as a man but he would try to work it out. In January 1969 she complained again to the elder MacNeill. He again advised her, so she said, that Malcolm would not approve of her making as much as a man, and he again assured her that he would try to work it out. She quoted him as telling her that she was worth as much as the men. She was aware that Malcolm MacNeill had fixed Bruns' salary.

█ It might seem that Mrs. Orr could have decided at some time before 1970 that perhaps the elder MacNeill was not "running the show," or that part of it which involved the fixing of salaries of department heads and that possibly, in this area, Malcolm MacNeill was "in charge of the operations of the company." Malcolm MacNeill testified that she did not discuss her salary with him. She testified that she did not discuss salary with Malcolm MacNeill. On further questioning she said she thought she might have talked with him for a few minutes in 1970. Further examination elicited the response "I asked him why I couldn't—you know, why they wouldn't approve it, and he said that I didn't have any business except in the Accounting Department and that these other duties and so forth that I handled had nothing to do with it, and he just wasn't going to sign it." It might seem strange that Mrs. Orr could remember so well all that the senior MacNeill said to her on the occasions beginning in 1967 but find it so difficult to recall the conversation with the junior MacNeill. But, of course, this Court accepts the District Court's determination on credibility.

The District Court concluded that recovery by reason of differences in bonus payments should be denied because the differentiation was based on reasons other than sex.

█ The District Court noted that, following Mrs. Orr's resignation, the agency paid her successor almost the same salary as she had been receiving although he was less experienced. The District Court stated that this "underlines the discrimination exercised against" Mrs. Orr. This deduction does not follow. If her successor's work was done as well, and the contrary is neither found nor suggested by the District Court, it might be said that he should have been paid as well, and this we think follows whether he was more or less experienced than his predecessor or of the same or different sex.

█ The District Court, it seems, relied upon the testimony of Messrs. Bruns and Rogan, witnesses for Mrs. Orr, as the basis for the finding that "an insurance agency operation of this size depends with success upon the efficient functioning of all of its departments." Bruns testified as to the differences between the production of business and the

keeping of records and stressed the job differences. He expressed the opinion that they were of equal importance. Rogan also pointed out that the functions of the Accounting and Claims Departments were not similar, that the duties were different, and not comparable and that there was no parallel. In response to a leading question Rogan gave an affirmative answer to a query as to whether one function was just as important as another. In her testimony Mrs. Orr recognized the differences between that which she did and that which was done by Bruns and Rogan. She conceded that her accounting activities might be called a mechanical type of thing. She recognized the necessity for the use of judgment and the exercise of discretion in the production and claims departments, and conceded that this was not so in the Accounting Department except in the procurement of supplies.

To buttress its conclusion that the difference in pay between Messrs. Bruns and Rogan on the one hand and Mrs. Orr on the other was based on sex discrimination, the District Court recited that at one time she had been the highest paid of the department heads. If this is in any way relevant it would seem to indicate an absence of sex discrimination. It is recited that three of the four department heads were Vice Presidents of the company and the fourth was the President of the subsidiary corporation. Malcolm MacNeill was a Vice President and it was he who fixed Bruns' salary and declined to pay Mrs. Orr an equal amount. We know of no rule requiring that the pay of a corporate officer shall be determined by his or her title.

The District Court included in its findings the statement that the jobs in this are not as "substantially equal" as in other cases[1] where recovery has been permitted. Does this mean that the jobs in this case are less than substantially

equal?[2] We cannot say. We do say that the evidence does not sustain the District Court's determination that the jobs here are substantially equal. Nor is there support for its determination that there has been discrimination by reason of sex.

The District Court decided that "based on the unique fact situation in this case, Mrs. Orr is entitled to recover." To be unique a thing, be it red cow, gray horse, peppercorn or law suit, must be the only one of its kind, without an equal or an equivalent. It may be said that every case, in some way or other, is different from every other case. Nothing presented by the record of the case before us calls for the application of a unique doctrine or requires a decision other than is dictated by the principles set forth in the precedents.

Title VII of the Civil Rights Act of 1964 provides in pertinent part:

> "It shall be an unlawful employment practice for an employer—(I) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .." 42 U.S.C.A. Sec. 2000e–2(a).

The sex discrimination provisions of Title VII of the Civil Rights Act of 1964 must be construed in harmony with the Equal Pay Act of 1963, 29 U.S.C.A. Sec. 206(d). Hodgson v. Brookhaven General Hospital, 5th Cir. 1970, 436 F.2d 719; Ammons v. ZIA Co., 10th Cir. 1971, 448 F.2d 117; Shultz v. Wheaton Glass Co., 3d Cir., 421 F.2d 259, cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64. The 1964 act provides that any differentiation which is authorized by Section 206(d) of the 1963 act shall not be unlawful under the Civil Rights Act of 1964. The statute provides in part:

1. Citing Weeks v. Southern Bell Tel. & Tel. Co., 5th Cir. 1969, 408 F.2d 228.

2. There is a temptation, which will be suppressed, to discuss whether "substantially equal" is equal, whether less than equal is

unequal and therefore "less than substantially equal" is also unequal. Such an exercise in syllogistic semantics would serve no useful purpose here.

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C.A. Sec. 206(d)(1).

To establish a case under Title VII it must be proved that a wage differential was based upon sex and that there was the performance of equal work for unequal compensation. Ammons v. ZIA Co., supra.

The jobs in question need not be identical, but they must be substantially equal. Brennan v. J. M. Fields, Inc., 5th Cir. 1974, 488 F.2d 443; Hodgson v. Corning Glass Works, 2d Cir. 1973, 474 F.2d 226; Hodgson v. Fairmont Supply Co., 4th Cir. 1972, 454 F.2d 490; Ammons v. ZIA Co., supra. This court has recently said:

"When Congress enacted the Equal Pay Act, it substituted the word 'equal' for 'comparable' to show that 'the jobs involved should be virtually identical, that is, they would be very much alike or closely related to each other.'" Brennan v. City Stores, Inc., 5th Cir. 1973, 479 F.2d 235.

The record does not support the determination that Mrs. Orr sustained her burden of proving equal work. The District Court stated that "an Insurance Agency operation of this size depends with success upon the efficient functioning of all of its departments." However true this may be it does not follow that all who participate in the efficient functioning are doing equal work.

The only evidence of sex discrimination is the controverted statement of Frank R. MacNeill that his son would not pay a woman as much as he paid a man. Yet the fact is that at one time Mrs. Orr was paid more than any of the men who were the other department heads. The fact is that she was paid more than the man who succeeded her and who, presumably, was doing work equal to that which she had done. The fact is that she was never paid less and much of the time was paid more than the salary of Vice President Moore who was the head of the Casualty Department. The facts show that the salary differences were based upon other reasons than the conjecture of MacNeill senior that MacNeill junior wouldn't pay a woman as much as a man. Although various phases of a business organization are essential to its operation, it does not follow that the phases involve equal work such as must be shown in an action based upon sex discrimination. Congress certainly did not intend such a result.

The duties of Mrs. Orr and Messrs. Bruns and Rogan were greatly dissimilar even though each was the manager of a department. This without more precludes the characterization of the performance of their jobs as equal work. Hodgson v. Golden Isles Convalescent Homes, Inc., 5th Cir. 1972, 468 F.2d 1256.

It is clearly apparent from the undisputed evidence, including the testimony of Mrs. Orr, that Messrs. Bruns and Rogan had greater responsibility and were required to exercise greater skill in the performance of their jobs than was Mrs. Orr. Underwriting fire risks and approving claims require the exercise of judgment and developed skill. The independent judgment of Mrs. Orr in purchasing supplies is not comparable to that involved in underwriting risks and settling claims.

The evidence failed to show sex discrimination. Judgment should have been entered for the appellant. The judgment for the appellee is reversed and the cause is remanded for the entry of a judgment for the appellant.

Reversed and remanded.