Bernard L. BERRY, Hanges D. Ivey, David B. Casteel, Melvin Ferguson, Ronald L. Davis, Paul E. Clark, Fred O. Archer, Ernest L. Ricketts, Joseph L. Petrie, Harrell N. King, Jr., and L. S. Maynard, on behalf of themselves and as representatives of and for and on behalf of all other persons similarly situated, Appellants,

v.

The CITY OF PORTSMOUTH, VIRGINIA, Board of Trustees of the Portsmouth Fire and Police Retirement System, William E. Kube, Richard D. Ottavio, Eugene G. Williams, James W. Bolding, Jr., Richard R. Wood, and Lee J. Hallett, Secretary, Portsmouth Fire and Police Retirement System, Appellees.

No. 76–1762.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 12, 1977.

Decided Sept. 16, 1977.

---

1. *Detroy v. American Guild of Variety Artists,* 286 F.2d 75, 79 (2 Cir. 1961).

PER CURIAM:

The plaintiffs, appellants here, brought this action in the district court on behalf of themselves, all present employees of the Fire and Police Departments of the City of Portsmouth, Virginia, and all former employees, "currently receiving disability retirement benefits from the City whose benefits are or could be subject to reduction under § 31–162." No class has been certified and no question is made on appeal in any way connected with class actions. They sued under 42 U.S.C. §§ 1981, 1983, 1994, 1988; 28 U.S.C. §§ 1343 and 2201, et seq., the Fifth, Thirteenth and Fourteenth Amendments to the United States Constitution, and pendent jurisdiction of the State claims, for declaratory and injunctive relief to prevent the City of Portsmouth (the City), and Board of Trustees of the Fire and Police Retirement System (the Board), and the Board's individual members and Secretary from enforcing the City Retirement Plan as amended.

The district court dismissed the action without prejudice for lack of a substantial federal question, saying that even if the court had jurisdiction it should abstain until the state courts could interpret the statutes and ordinances in question.[1]

The plaintiffs appeal, saying they have been denied their constitutional rights, including, but not limited to, equal protection of the laws, substantive and procedural due process, and freedom from involuntary servitude. We affirm.

Although the district court apparently based its decision partly on the premise that "jurisdiction may not be established against . . . [these defendants] in their official capacities under 42 U.S.C. § 1983," we do not need to reach that question in our decision and express no opinion on it.

The facts as alleged in the complaint, which we must take as true, are the following:

C. Michael Montgomery and Wayne Lustig, Norfolk, Va. (Campbell, Lustig & Hancock, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for appellants.

Gordon B. Tayloe, Jr., City Atty., Portsmouth, Va. (James T. Martin, Jr., Asst. City Atty., Portsmouth, Va., on brief), for appellees.

Before WIDENER and HALL, Circuit Judges, and WYZANSKI, Senior District Judge.*

* United States District Court for the District of Massachusetts, sitting by designation.

1. The state statute permitting reduction in payments is § 15.1–134 of the Code of Virginia. § 1994 is probably a typographical error and should be § 1984.

In 1961, the City enacted what is now § 31–162 of the City Ordinances of the City of Portsmouth:

"Sec. 31–162.   Reduction of disability retirement allowance.

(a) Whenever the examiner certifies to the board that any member receiving a disability retirement allowance is, prior to his normal retirement date, engaged in gainful occupation or work paying more than the smaller of (1) the difference between his disability retirement allowance and his average final compensation and (2) one-half (½) his average final compensation, the board may reduce such retirement allowance to an amount which, together with the amount earnable by him, equals the smaller of (1) the amount of his average final compensation and (2) the sum of one-half (½) his average final compensation plus the original amount of retirement allowance.

(b) Should the examiner report and certify to the board at any time that any member receiving a disability retirement allowance is able to engage in gainful occupation paying more than the smaller of (1) the difference between his retirement allowance and his average final compensation at retirement, and (2) one-half (½) his average final compensation and should the board find that such member shall have refused any employment considered by the board suitable to his capacity, he shall not be entitled to any such allowance during the continuance of such refusal, unless in the opinion of the board such refusal was justified."

When originally enacted, the System was funded by both the City and the employees, but in 1967 the City undertook the entire financing.[2] Even though the Board knew that some disabled employees were gainfully employed, from 1961 to 1975 it paid all disabled employees an unreduced pension.

But in 1975, § 31–162 was amended[3] by the City Council to require, among other

---

2. The City says it refunded previous employee contributions in 1967.

3. § 31–162(a) and (b) were amended to read as follows:

"(a) Whenever a beneficiary of a disability retirement allowance is prior to his normal retirement date engaged in gainful occupation or work paying more than the difference between his disability retirement and his average final compensation, the Board may reduce such retirement allowance to an amount which, together with the amount earnable by the beneficiary equals the amount of the sum of his average final compensation.   Average final compensation may for the purpose of this section, be increased in proportions to any increase of benefit a beneficiary has received since retirement.   Additional increases of average final compensation may be made in accordance with any percent increase of the consumer price index as published by the Bureau of Labor Statistics of the United States Department of Labor from the month from which the last benefit increase was based, or from the month of retirement, to the month six months before and reduction of benefit as may be required under this section.   Adjustments of average final compensation under this section will be made no more than twice in any one year.

(b) Should the examiner report and certify to the board at any time that any member receiving a disability retirement allowance is able to engage in gainful occupation paying an amount equal to or more than his average final compensation as described in paragraph (a), and should the board find that such member shall have refused any employment considered by the board suitable to his capacity, he shall not be entitled to any such allowance during the continuance of such refusal, unless in the opinion of the board such refusal was justified."

The amendments included the following additional language:

"(c) At least once each year during the first five years following retirement of a member on a disability retirement allowance, and at least once in every two (2) year period thereafter, the board shall require any such member, prior to his normal retirement date, to submit to the secretary of the board such information as the board may deem appropriate concerning any gainful employment, and the compensation therefor, in which the member may be participating or in which the member may have participated subsequent to his retirement from service.   In addition to the foregoing requirement, any member on a disability retirement allowance shall within 30 days of obtaining employment, report to the secretary of the board the date and place of such employment and the amount of earnings.   Should such member refuse to submit the information as directed by this section, his retirement allowance shall be discontinued until his withdrawal of such refusal, and should such refusal continue for a period of one (1) year, all his rights to any further disability allowance shall cease.   Should the

things, that employees on disability retirement submit to the Board's secretary "at least once each year during the first five years following retirement . . . such information as the board may deem appropriate concerning any gainful employment, and the compensation therefor. . . ."

In August, the Board's Secretary mailed to disabled employees a questionnaire for information related to their gainful employment, and, in November 1975, notified them that he would begin in January 1976 to reduce pension payments in accordance with § 31–162.

Plaintiffs contend that by making disabled employees, but not old-age retirees, subject to pension reduction, the amended Retirement System will deprive them of equal protection of the laws under the Fourteenth Amendment. They also claim that because the City agreed to take over the entire funding of the system in lieu of giving police and firemen a pay raise in 1967, they have a due process property right to unreduced pension payments. To enforce § 31–162 now, they argue, after failing to reduce pensions under the statute for fifteen years and after failing to mention to police officers upon their application for disability retirement any reduction possibilities, is to violate implied contract terms which constitutes deprivation of property without substantive and procedural due process.

■ We do not agree. When the City enacted its plan for certain individuals to receive disability benefits under certain conditions, it reserved the right in the Board to reduce payments if the disabled employee resumed gainful employment or refused employment suitable to his capacity. Neither the Board nor the City ever relinquished the right to reduce pensions. It was only through the Board's grace that gainfully employed disabled workers continued to receive unreduced payments until 1975. The employees have no property right to continued unreduced payments,

paid in the first place in the discretion of the Board, necessary to invoke procedural due process protection, especially in the context presented here if at all. In the case before us, there is no claim that any plaintiff has or will have any erroneous fact found with respect to his status without a hearing. The claim is that because the ordinance does not contain a provision for hearing, it is invalid. We do not agree. We will not presume the Board or City will not provide a hearing where required. *Beauchamp v. Davis*, 550 F.2d 959 (4th Cir. 1977). We note that although plaintiffs claim a liberty interest in their complaint, they do not argue it on appeal.

There is little or no difference in substance between this case and *Heath v. City of Fairfax*, 542 F.2d 1236 (4th Cir. 1976). There, plaintiffs were police officers asserting that under a salary scale ordinance they were entitled to certain pay increases which the City refused to pay. This court stated in that case:

"The plaintiffs' cause of action was a simple one for breach of contract. . . They contended by their complaint that the pay schedule adopted by the City Council created a contract between the City and them with reference to their salary and that they have not been paid the salary as fixed in such contract. . . But there manifestly are no federal constitutional issues posed by a simple dispute over the construction of a pay schedule contract and that is all there is to this case. This is a suit 'wholly under [a municipal ordinance],' *McCorkle v. First Pennsylvania Banking and Trust Co.* (4th Cir. 1972) 459 F.2d 243, 250, involving 'merely the interpretation and application of the [municipal pay schedule ordinance],' *Doby v. Brown* (4th Cir. 1956) 232 F.2d 504, 505, cert. denied 352 U.S. 837, 77 S.Ct. 57, 1 L.Ed.2d 55 (1956). The plaintiffs' theory that the City has violated their due process rights by failing to pay them the salary they claim under the

board determine that an overpayment of a disability allowance has been made, such overpayment shall be corrected by a suspension of all

or part of the disability allowance for such period of time as may be necessary to complete such repayment."

contract, and that it has violated equal protection by giving 'automatic' annual salary increases to the Chief of Police and not to them, thereby giving rise to jurisdiction under § 1331, if sustained would mean that whenever a City or political subdivision fails to pay a disputed claim, and pays other claims, a suit on such claim rises above the level of a mere breach of contract and becomes an assertion of constitutional rights, justiciable under § 1331. Such a specious theory of federal jurisdiction has been uniformly repudiated." (Citations omitted) 542 F.2d 1237–38.

As in *Heath*, the basic question here is whether there was an implied contract, and, if so, whether the City and the Board breached the contract. These questions are not of constitutional magnitude.[4]

Plaintiffs contend that § 31–162 is impermissibly vague because it prescribes no standards to guide the Board in determining whether or not to reduce payments and whether or not certain employment is "suitable to an employee's capacity" under the ordinance. But they can point to no plaintiff whose benefits were reduced when he chose not to accept "suitable" employment. Nor do they contend that the Board has not or will not comply with acceptable standards despite the ordinance's silence. Since vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand, *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), we think this challenge is premature.

At oral argument, however, plaintiffs said they would present evidence at trial to show the Board reduced one disabled employee's pension more than another's when both received the same pay for gainful employment. But they did not argue that the disparity in reductions was based upon an unconstitutional classifica-

tion or upon any other constitutionally impermissible reason. At best, such evidence could show only that the Board abused its discretion in administering the ordinance. Whether or not it did so is a question of State law.

Finally, plaintiffs argue that because they must accept a job which the Board determines is suitable or lose their benefits, the ordinance imposes involuntary servitude contrary to the Thirteenth Amendment. We find this argument without merit. While it is to their economic advantage not to refuse "suitable" employment, they are free to do so if they wish. Nothing in the ordinance compels them to take any job.

Because we think there is no substantial federal question presented, no claim under State law under pendent jurisdiction should be considered. *Heath*, at 1238.

The dismissal of the complaint without prejudice is accordingly

*AFFIRMED.*

---

4. We also do not think having a breaking point for the amount a disability retiree may earn before any reduction in benefits may be imposed deprives him of equal protection of the laws. Neither is applying the reduction of pensions to disability retirees and not to old-age retirees an unlawful classification.