Eloise A. JACOBS, Plaintiff,

v.

COLLEGE OF WILLIAM AND MARY,
et al., Defendants.

Civ. A. No. 79–133–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

Dec. 15, 1980.

Robert M. White, Michael J. Murphy, White & Selkin, Norfolk, Va., for plaintiff.

Marshall Coleman, Atty. Gen. of Virginia, Pamela A. Sargent, Martin A. Donlan, Jr., Asst. Attys. Gen., Richmond, Va., for defendants.

## OPINION AND ORDER

KELLAM, District Judge.

Eloise A. Jacobs seeks to recover of defendants damages for alleged (a) discrimination against her in pay because of her sex,[1] (b) discrimination against her because of her age,[2] and (c) violation of her constitutional rights by failing to give her proper notice that her contract would not be renewed.[3] Upon motion, the Court dismissed the action based on any allegation of a violation of 42 U.S.C. § 2000e–2(a) for failure to follow the provisions relating to notice,[4] and Count III as to any claim against the College or other named defendants in their official capacities.[5] Hence, the action remained or continued as to Counts I and II against the College and the individual defendants in all capacities, and as to Count III against the individual defendants in their individual capacities.

Certain facts were stipulated by the parties, namely, that plaintiff was born April 1, 1938; College is operated by the Commonwealth of Virginia and is an agency thereof; Thomas A. Graves, Jr. is president and Mildred C. West is chairperson of the Women's Department of Physical Education, respectively, of College, and each of them held such positions at all times relevant to this action; that plaintiff was employed by College for the school years 1974–75, 1975–76, 1976–77 and 1977–78, as a part-time employee on the basis of "temporary restricted appointment," except for the Fall Semester 1976, during which she was employed on the basis of a full salary, temporary restricted employment. Further, the parties stipulated that the general duties performed by plaintiff during her years of employment were:

1974–1975: Administrative Assistant for Intramural Sports.

1975–1976: Director of Women's Intramurals, Women's Junior Varsity Basketball Coach, teaching responsibilities for softball and basketball.

1976–1977: Director of Women's Intramurals, Women's Varsity Basketball Coach, teaching responsibilities for bowling.

1977–1978: Director of Women's Intramurals, Women's Varsity Basketball Coach, teaching responsibilities for bowling.

In March 1978 College announced the creation of four full-time positions in the Women's Department of Physical Education. Plaintiff applied for one of these positions but was not selected. Tried to the jury, it returned a verdict in the following language—

We, the Jury, find—

As to Count I for Plaintiff $51,200.00 in the claim against College of William and Mary, on the equal pay claim and corre-

---

1. Alleged to be in violation of 42 U.S.C. § 2000e–2(a) and 29 U.S.C. § 206(d)(1). The action under 42 U.S.C. § 2000e–2(a) was dismissed for failure to follow the administrative procedure and file the notice required by 42 U.S.C. § 2000e–5(e).

2. Alleged to be in violation of 29 U.S.C. § 623.

3. Alleged to be in violation of 42 U.S.C. § 1983.

4. and 5. See Opinion and Order of July 29, 1980, filed July 31, 1980. 495 F.Supp. 183.

sponding to the same equal pay as Mrs. Wetters. ($12,800.00 pr. yr.)—4 years As to Count II for Plaintiff in the Claim against College of William and Mary on the age discrimination claim and $10,000.00

As to Count III for Plaintiff against Mrs. West on the claim against Dr. Graves and Mrs. West on the claim of having violated the plaintiff's rights, and $10,000.00

Defendants have moved for judgment in their favor, or in the alternative to grant them a new trial.

I

■ A jury verdict is to be viewed in the light most favorable to the party in whose favor it is found, and such party is entitled to the benefit of all inferences which the evidence fairly supports, even though contrary inferences might be drawn. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979); *Continental Co. v. Union Carbide*, 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); *Lavender v. Kurn*, 327 U.S. 645, 652, 66 S.Ct. 740, 743, 90 L.Ed. 916; *Howard v. McCrory Corp.*, 601 F.2d 133, 136 (4th Cir. 1979); *Krodel v. Houghtaling*, 468 F.2d 887, 888 (4th Cir. 1972).

■ Issues of fact should be left to the determination of the jury, whose duty it is to determine the credibility of the witnesses, and the Court should not attempt to substitute its judgment for that of the jury in disputed cases. But, a jury must not be left to speculation or conjecture, or render a verdict based on sympathy. Where a verdict is contrary to the law or the evidence, or without evidence to support it, it is the duty of the Court to set the verdict aside. Any other rule would make the verdict final and not subject to question or review. The test to be applied is that when "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict," the Court should set the verdict aside. *Brady v. Southern Railway Company*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943), and cases cited therein. *See also*

*Howard v. McCrory Corp., supra.* Where "there is no substantial evidence to support the verdict," even though resolution of inferences must be left to the jury, nevertheless, "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Business Development Corporation of North Carolina v. United States*, 428 F.2d 451, 453 (4th Cir. 1970). *See also Hawkins v. Sims*, 137 F.2d 66, 67 (4th Cir. 1943); *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied* 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958); *Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne*, 386 F.2d 193 (4th Cir. 1967). The Fourth Circuit spoke in *United States v. Shipp*, 409 F.2d 33 (4th Cir. 1969), a criminal case, but said the same test applied in civil cases, thusly—

These general principles demonstrate that it is not ordinarily within the appellate court's province to review a jury's resolution of issues of credibility. The trial judge, who like the jury had the advantage of observing the witnesses as they testified, is vested with broader power. Even when there has been substantial evidence which required him to submit the case to the jury, he may in his discretion set the verdict aside and grant a new trial if he thinks the verdict is against the weight of the evidence, and it is his duty to do so if he is convinced that permitting the verdict to stand would result in a miscarriage of justice. The power exists in both civil and criminal cases.

In *Wachovia Bank and Trust Company v. United States*, 288 F.2d 750 (4th Cir. 1961), in approving the entry of a directed verdict, the Court quoted from the opinion of Judge Soper in *United States v. Grannis*, 172 F.2d 507 (4th Cir. 1949), setting aside the judgment based on a jury verdict, where at page 513, he said:

In the federal courts the judge should direct a verdict for either party, even if the party has the burden of proof, when the facts are so convincing that reasonable men could not differ as to their signif-

icance; and this is especially true when there is no conflict in the evidence. (Citations omitted). " * * * When, on the trial of the issues of fact in an action at law before a Federal Court and a jury, the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct a verdict for the other party."

In *Ford Motor Company v. McDavid*, 259 F.2d 261 (4th Cir. 1958), *cert. denied*, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229, the Court set aside a judgment for plaintiff, based on the verdict of a jury, and directed entry of judgment for defendant, saying at page 266, that the old rule of not permitting a jury to draw any inference from circumstantial evidence, if one is as probable as the other, has been replaced by the more sensible rule—

> that it is the province of the jury to resolve conflicting inferences from circumstantial evidence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the Court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.

*See also Norfolk Southern Ry. Co. v. Davis Frozen Foods*, 195 F.2d 662 (4th Cir. 1952); *Wright v. Grain Dealers Nat. Mut. Fire Ins. Co.*, 186 F.2d 956 (4th Cir. 1950); *Hartman v. Baltimore & Ohio R. Co.*, 89 F.2d 425 (4th Cir. 1937).

Not only do defendants say the verdict is contrary to the law and the evidence, but that it is so excessive as to warrant a finding the jury was misled by a mistaken view of the evidence.

## II

Having set out the principles controlling the Court in a ruling on a motion for judgment, n.o.v., we proceed to consider each

claim upon which plaintiff obtained a verdict.

### A.

■ In Count I plaintiff asserted a claim under the equal pay act, 29 U.S.C. § 206(d)(1), which prohibits discrimination in rates of pay between employees on the basis of sex. That is, there must be equal pay for equal performance which requires equal skill, effort and responsibility.

First, defendants say that any award of damages under Count I must be limited to damages incurred during the two years immediately preceding the filing of the complaint on November 12, 1979; that since plaintiff, during said two years, was employed by the College from December 12, 1977 until June of 1978, an award for four years service is excessive and improper. 29 U.S.C. § 255, *EEOC v. Gilbarco, Inc.*, 615 F.2d 985 (4th Cir. 1980); *Hodgin v. Jefferson*, 447 F.Supp. 804, 809 (D.C.Md.1978).

■ Here the verdict of the jury as to Count I, the equal pay claim, sets forth it is for a four year period. It says it is for pay "corresponding to the same equal pay as Mrs. Wetters ($12,800.00 pr. yr.)—4 years."[6] It is clear the equal pay claim was not to be measured by the sum paid a female employee whose employment was after that of plaintiff. Her equal pay claim is to be measured by that of the opposite sex. It is clear this part of the verdict cannot stand.

But defendants say that the evidence would not sustain any verdict for plaintiff on this claim.

■ To make out a case under the Act, the plaintiff must show "that an employer pays different wages to employees of different sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' . . ." and plaintiff "has the burden of proof on this issue." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). *See also Hodgson v. Fairmount Supply Compa-*

---

**6.** Mrs. Wetters was the new coach employed at a pay of $12,800.00 per year.

*ny*, 454 F.2d 490, 493 (4th Cir. 1972). Once plaintiff carries her burden of showing an employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to defendant to show that the differential is justified under the Act.

■ While plaintiff asserts she was not given pay for equal work on jobs the performance of which require equal skill, effort and responsibility (work), she does not name a specific person of the opposite sex by which to measure pay. Plaintiff's duties were stipulated to in the final pretrial order. While evidence of periods prior to the period for which plaintiff may maintain this action and recover was permitted, plaintiff must show a difference in pay for equal work for the period December 1977–78. Counsel all agree this is the period in issue. For the school year 1977–78, she was "Director of Women's Intramurals, Women's Varsity Basketball Coach, teaching responsibility for bowling." She said this was equal to the work of the Men's Basketball Coach and of his two assistants, and the Baseball Coach.

Plaintiff holds a major Degree in Business Education of Commerce, a minor in Health, Physical Education and Recreation, a Master's Degree in Guidance and Counseling. She played basketball in high school and played on a women's basketball team at L.S.U., but she did not play intercollegiate basketball because there was no such sport at her college. She coached basketball in high school for two years after leaving college. She taught in high school. Later she taught Health, Physical Education and Recreation in high school, directed cheerleaders and later coached a girls' basketball team. After coming to Virginia in 1967, she taught in an elementary school, and there coached a boys basketball team, and a girls' basketball team. She read books and attended clinics. She came to William and Mary in 1974. In 1977–78 she was director of women's intramural program, along with coaching, and she said that on her own she did scouting and recruiting. She devoted 3 days a week to her work. She taught one or two classes a semester. The class would run one to two hours and be held twice a week. She coached volleyball, basketball, and some other sports, but not at the same time. That is, she would start basketball after volleyball ended and so on, although there could be a two-week overlap.

*Corning Glass Works v. Brennan, supra,* makes it clear that the Act incorporates "well-defined and well-accepted principles of job evaluation so as to ensure that wage differentials based upon bona fide job evaluation plans would be outside the purview of the Act." 94 S.Ct. p. 2231.

Edward E. Jones coached baseball during the period in question. He was Associate Professor of Physical Education at the College, and had been there for 19 years, that is, since 1961. He taught full time, on the average of 12 to 13 hours a semester, which would be in-class time of 15 to 17 hours a week. In addition, he was intramural director and had been since 1965, which was responsibility for the men's intramurals program, to organize, supervise and totally run the program. His program consisted of some 20 activities, in which 60% of the students participated. That is, between 12 and 13 hundred men participated in one or more activities each year. The Department had two assistants that were in Physical Education, and who assisted Jones, but this was not their primary responsibility. They taught in the College and were paid for their teaching responsibilities, but not for their sports activities. In addition, Jones teaches the activity courses. Most of the students are required to have four units in physical education, and Jones teaches these courses. In the 77–78 year he taught handball and an orienteering course. Jones' salary for the school year 1977 to 1978 was $17,320.00. He said in coaching he spent about three hours a day on the field. In addition, he had the responsibility for the Gym, which was the center for recreation, and he was in charge of maintenance of the intramural fields, and keeping them in playing condition. The manual labor is done by the plant department, but Jones had graduate assistants who helped him.

Jones has a Bachelor of Science with a major in Physical Education. He holds a Master of Education, with emphasis in Education Administration.

His contract as a professor did not require Jones to work as intramural director, and he received no additional funds for this work, nor for maintenance of the intramural fields.

William Bruce Parkhill is the head coach of men's basketball at the College, and a twelve month employee. He came there in 1972 as assistant basketball coach, and became head coach in the 1977–78 season at a salary of approximately $17,000.00. A major part of his duties as coach is that of recruiting, which extends over the spring, summer and fall months, as well as during the basketball season. It requires extensive travel to schools and homes of prospective students to observe their play, to confer with them, and seek to have them agree to attend the College. These trips often extend for one to two weeks at a time, during which the coach is away from his home and on the road. Because the College maintains a high academic standard, the coach and his assistants must counsel the players academically so they can remain in school. The coach must establish weekly meetings with them, establish a master plan for the practice season, including a daily practice schedule.

The men's team plays in Division I of the NCAA. In this Division the College may use financial aid by giving a total grant-in-aid—room, board, books, tuition, and fees for student athletes. In Division II, the College may give some financial help, such as scholarship help not based on need. In Division III aid is based solely on need. The men's basketball team is a revenue producing sport. This creates pressure on the coach to produce, in order to sell season tickets, obtain contributions for scholarship funds, and establish a winning season. The playing schedule is about 26 games a year.

Parkhill has two assistant coaches, who have teaching responsibilities of about six hours a week. One is paid $12,000.00 to $13,000.00, the other about $9,000.00. The assistants work twelve months, and average more than eight hours a day.

Parkhill has a BS Degree in Health and Physical Education, and a Master's in Physical Education.

Plaintiff was employed for nine months only. She was Director of Women's Intramurals. She said "My primary duty . . . was to direct the women's intramural program, . . . . So, I did this, along with coaching basketball, which involved quite a few hours in scouting and recruiting, which I did on my own." Tr. of Ev. p. 167. She said her duties required ten hours a day three days a week. The position did not include recruiting. The women's basketball team was playing in small colleges league and governed by the provisions of AIAW Handbook. Under the regulations, the College was prohibited from subsidization or reimbursement of expenses for bringing prospective student athletes to the campus, and the College may not require personnel to undertake recruiting or scouting at their own expense. Plaintiff said the College was not allowed to suggest a faculty member do recruiting, and the College never suggested she do recruiting, or that it was a part of her job, and what recruiting and scouting she did, she did as a volunteer. Tr. of Ev. pp. 233–4. She could and did some recruiting by letter, and some scouting on her own. Any attempt to compare equal performance which requires equal skill, effort and responsibility between plaintiff and baseball coach Jones fails. He teaches full time, while plaintiff does not. This is enough to establish a difference, although there are many others. As to comparison with Parkhill, the men's basketball coach, the differences in skill, effort and responsibility are numerous, as are the duties. A substantial part of Parkhill's position is work, effort and skill in recruitment, requiring extended travel and absence from his home, along with writing and telephoning, while plaintiff's required duties were telephoning, writing or responding to letters; Parkhill's employment extends to full employment twelve months a year, while plaintiff's duties are for nine months and

generally limited to three days a week; Parkhill's coaching is in Division I, and plaintiff's is a wholly different type. As to the assistant coaches, they have teaching responsibilities of six hours a week and are annual employees. Further, and of importance, is the fact men's basketball is a revenue producing sport and women's basketball is not. The levels of coaches "are quite broad . . . requiring widely varying skills and background," and the evidence does not "show that within these levels [classes] the actual positions held by each during the periods of comparison required skill, effort and responsibility substantially equal to that required to perform the actual positions held by the males whose salaries were compared." *Stastny v. Southern Bell Telephone and Telegraph Company*, 628 F.2d 267, ¶ IV–B (4th Cir. 1980). To "establish a case [of discrimination] . . . it must be proved that a wage differential was based upon sex and that there was the performance of equal work for unequal compensation," and while the "jobs in question need not be identical, . . . they must be substantially equal." *Orr v. Frank R. MacNeill & Son, Inc.*, 511 F.2d 166, 171 (5th Cir. 1975). In the *Orr* case, the Court quoted from its opinion in *Brennan v. City Stores, Inc.*, 479 F.2d 235 (5th Cir. 1973), the following:

"When Congress enacted the Equal Pay Act, it substituted the word 'equal' for 'comparable' to show that 'the jobs involved should be virtually identical, that is, they would be very much alike or closely related to each other.' "

*See also Ammons v. ZIA Company*, 448 F.2d 117, 120 (10th Cir. 1971). The *Orr* case, *supra*, and *Ammons* case, *supra*, were cited with approval in *Stastny v. Southern Bell*, *supra*. Here, plaintiff must first prove discrimination because of sex, as "Congress did not intend that a naked averment of job discrimination would suffice to establish a *prima facie* case under the Equal Pay Act," but it requires "factual support of an accusation that the employer paid the aggrieved employee wages at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which

requires equal skill, effort and responsibility, and which are performed under similar conditions." *Ammons v. ZIA Company*, *supra*.

There is a complete absence of any evidence of sex discrimination. It is "clearly apparent from the undisputed evidence . . . that" Parkhill and his assistants, and Jones "had greater responsibilities and were required to exercise greater skill in the performance of their jobs than was [plaintiff]," and "the evidence fails to show sex discrimination." *Orr v. Frank R. MacNeill & Son, Inc.*, *supra* [511 F.2d 171]. There is here "no showing of any salary differential for . . . positions which were substantially equal . . . ." *Keyes v. Lenoir Rhyne College*, 552 F.2d 579, 580 (4th Cir. 1977). The evidence being undisputed, there is but one verdict which can be rendered.

### B.

Plaintiff's second claim is that she was denied employment in the newly created position as full-time female varsity basketball coach solely because of her age, in violation of 29 U.S.C. § 623, the Age Discrimination in Employment Act. Pursuant to 29 U.S.C. § 627, the prohibition of the Act is limited to persons who are at least 40 years of age. Plaintiff was born April 1, 1938, and attained the age of 40 on March 31, 1978.

Sometime about March 1978, announcement was made of four full-time appointments in the Physical Education Department, which combined responsibilities in women's athletics and physical education for the 1978–79 academic year. The positions combined one or more of the women's athletics with teaching responsibilities. The appointments were to become effective August 15th and extend to June 1st. Among the women's athletics were basketball coach, track coach, intramural director, and so on. The qualifications required were listed as (a) Master's Degree, (b) experience and competency in areas of application.

A search committee was named composed of Dr. Patricia B. Crowe, as chairman, with

four other faculty members, including Mildred B. West, who was Chairman of the Department of Physical Education. The procedure to be followed by the search committee was set forth in writing. See Defendants' Exhibits 14 and 16. Notices with job descriptions were sent to a total of 85 colleges and universities. A folder was created for all qualified applicants. Some 88 persons applied. A review of the applications was done by the search committee. The committee selected some 24 possible candidates. This list was subsequently reduced to 14. The ultimate selection was to be made by the entire faculty of the Department. At the faculty meeting the list was further reduced to 8 and then to 5.[7] The faculty was furnished with the information on the 24 and requested to especially look at the files with information on each applicant. Schedules were set up for interviews for basketball, track and intramural and training positions.

A chart was prepared setting forth the education, coaching experience, playing experience, strong teaching experience, etc., of those on the list, which was presented to the faculty for its consideration. The same procedures were used in selecting the persons to fill each of the four positions. The faculty unanimously voted to employ Barbara Wetters as basketball coach and instructor for the 1978–79 year. The search committee had recommended her. It said in its recommendation that from interviews, background, experience, qualifications and performance, as between the plaintiff and Wetters, Wetters was better qualified to coach basketball and to teach in the specific areas designated in the announcement of the position than any other person interviewed, including the plaintiff.

The qualifications of plaintiff and Wetters were compared by the committee and faculty. The faculty unanimously chose Wetters. Numerous witnesses compared their qualifications and the only witness that did not say Wetters was better qualified than plaintiff, was the plaintiff.

Plaintiff complained that the position was advertised at $10,000.00, but that Wetters was given a contract at $12,800.00 because she was then coaching at a college and then receiving that sum. If the College was to obtain her services they had to meet the salary request.

Before selecting the person to fill the position some members of the faculty suggested the captain of the basketball team should be interviewed. The chairman of the selection committee interviewed the captain and reported to the faculty. The nature of the interview is set out in Defendants' Exhibit 15. The captain related that a majority of the team members generally were not happy regarding their skill, learning and performance; that the present coach (plaintiff) did not have the knowledge that the team expected or demanded; that the players' skill potential was not being tapped or explored; that the team's expectations were not being fulfilled in terms of the team's collective and individual skill and potential; that the team was extremely fond of plaintiff as a person, but the team felt the knowledge and skill of the coach was not indicative of a qualified candidate for the full-time position. This information was considered by the faculty in making the selection.

Plaintiff says that the requirements for the position were listed as a Master's Degree in Physical Education, and that Wetters did not have such a Master's Degree. The evidence establishes that at time of her application all of her course work had been done toward the Master's Degree; that she had completed her thesis in the summer before she started work and that her "orals" had to be scheduled in the fall because of lack of availability of faculty at the institution from which she was receiving her degree. Further, the evidence is clear that where one has done the course work, but not finished the thesis or done the "orals," they are considered as proper to fill a position requiring a Master's Degree, if they ultimately complete the thesis and the orals.

7. If age was a factor, why was plaintiff even included in the reduced number?

More important, plaintiff does not have a Master's Degree in Physical Education. Hence, this advertised requirement could not be met by plaintiff.

There is no evidence that age was ever mentioned by any member of the selection committee or faculty during the process of grading or discussing the qualifications of applicants for the position of a basketball coach, or that the issue of age played any part in the selection.[8] Plaintiff's first witness, Carolyn Edwards, a reporter for the newspaper, testified plaintiff told her she would no longer be coaching at the College; that as a result of this information she contacted Mildred West, who confirmed the fact; that she asked Mildred West whether age had been a factor in not selecting plaintiff, and Mildred West said no.

Doctor Crowe was asked on the witness stand if in a conversation with the captain of the basketball team on May 1, 1978, she stated to her, "Wouldn't you all like a younger coach, someone like Mary Ann Stanley?" Doctor Crowe denied she made such a statement and again stated age was not mentioned or considered. Plaintiff was recalled to contradict Doctor Crowe, and said she had overheard such a statement. Though her testimony in rebuttal was somewhat different from his discovery deposition, that is not the question. The Court charged the jury that plaintiff's testimony in that regard went only to the credibility of Doctor Crowe's testimony, and was not substantive evidence that such a statement was made.

It is true, however, that plaintiff said that after the new coach had been selected she had a conversation with Mildred West in which Mrs. West gave her three reasons why Wetters had been selected, first because she was more qualified, she had played intercollegiate basketball within the last few years, and the faculty felt the team would not progress as well under plaintiff as they would under a younger coach.

Clearly, the jury nor the Court can substitute its judgment for that of the person or body charged with making the choice between two applicants for a position. In a case such as this plaintiff has the burden to prove, not that age was a factor, but that "age was the determining factor," and "to find that age was a factor that affected the decision is not equivalent to finding that age was a determining factor," and "proof that it was a determining factor is . . . essential to recovery under the ADEA." *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979). The prohibition under the Act is taking adverse action "because of" a worker's age. 29 U.S.C. § 623. In order for "plaintiff to prevail (s)he had to prove by a preponderance of the evidence that her [his] age was the 'determining factor' in her [his] discharge in the sense that, 'but for' her [his] employer's motive to discriminate against her [him] because of age, she [he] would not have been discharged." *Loeb v. Textron, supra,* p. 1019. *See also McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 282, 96 S.Ct. 2574, 2580, Note 10, 49 L.Ed.2d 493, where the Court said the proof must be "a 'but for' cause." *Loeb v. Textron, Inc., supra,* made plain that the issue is whether or not the choice between plaintiff and Wetters was made because of plaintiff's age, for "Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age." p. 1016. Whenever the evidence, as it is in this case, is "such that it is without contradiction that the College [company] in fact was forced simply to choose one person [man] over another and that the choice was not at all tainted with the impermissible criteria of age—then the District Court would be correct in directing a verdict for the defendants [appellee] at the end of all of the evidence." *Wilson v. Sealtest Foods Division of Kraftco Corp.,* 501 F.2d 84, 86 (5th Cir. 1974).

A plaintiff may establish a *prima facie* case under the ADEA by showing litigant is within the protested age group, met the applicable job classifications, that

---

**8.** Three of five members of the committee were over 40 years of age.

despite these qualifications litigant was rejected, and that but for litigant's age litigant would have been employed. Such "a prima facie showing is rebutted if the employer shows a legitimate non-discriminatory reason for the" employer's failure to select. *Smith v. Flax,* 618 F.2d 1062, 1066 (4th Cir. 1980). *See also Loeb v. Textron, Inc., supra; Cova v. Coca-Cola Bottling Co.,* 574 F.2d 958 (8th Cir. 1978). "After the employer has come forward with such evidence, the ultimate burden of persuasion remains upon plaintiff to show that age was a determining factor ...." *Smith v. Flax, supra.* It is a question for the jury if there is evidence which "would support a finding that age was a determining factor." *Id.* The fact that plaintiff may testify she is competent is not the issue, for plaintiff's "perception of herself [himself], however, is not relevant; it is the perception of the decision maker which is relevant." *Id.*

■■■■■ We are not here dealing with a person discharged from employment. The position was a new opening. Plaintiff had been employed for the 1977–78 term. Hers was "a temporary, restricted appointment which did (does) not carry fringe benefits." Letter of Employment (Defendants' Exhibit 4). She was an applicant as were some eighty-eight others. Plaintiff's complaint is that she was not selected over the other applicants, and that a failure to select her was due to her age. An employer "may meet this burden by showing that the failure to select (discharge) was 'for good cause,' 29 U.S.C. § 623(f)(3), or by showing that the failure to select (discharge) was 'based on reasonable factors other than age,' 29 U.S.C. § 623(f)(1)." *Cova v. Coca-Cola Bottling Co.,* 574 F.2d 958, 959–60 (8th Cir. 1978). The "Act does not require that advanced age and substantial length of service entitle employees to special favorable consideration; it requires merely that an employee ... not be the subject of discrimination because of ... age." *Id.* In an ADEA case, the plaintiff has "the burden of persuading the trier of fact that his rejection was a 'discriminatory decision.' " *Loeb v. Textron, Inc., supra,* p. 1015. Plaintiff must "demonstrate by competent evidence that the presumptively valid reasons for her (his) rejection were in fact a cover-up for a racially discriminatory decision." *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 807, 93 S.Ct. 1817, 1826, 36 L.Ed.2d 668 (1973). A mere reference to age is not sufficient to establish a right to recovery. It must have been a determining factor, and plaintiff must establish "but for" the age, she would have been selected. The evidence falls far short of meeting this standard. There is no dispute of any substantial fact and therefore no support for a verdict showing "but for" age plaintiff would have been selected.

The plaintiff's case is based solely on the plaintiff's testimony that she was told by Mrs. West that one of the three reasons Wetters was selected over her was the faculty felt the team would not progress as well under plaintiff as they would under a younger coach. The statement is denied by Mrs. West and it is not consistent with the testimony of Carolyn Edwards, the newspaper reporter who testified that Mrs. West, in response to her inquiry, said age had nothing to do with the selection. But assume Mrs. West did make the statement, that does not establish any right to a recovery. It must be shown that age was a factor. First, Mrs. West was only one member of a five member selection committee, and one of some 15 or more faculty members who unanimously voted on the selection. Second, there is no doubt that plaintiff was not the best qualified applicant. Third, the evidence fails to show age was a consideration or factor and that "but for" her age, plaintiff would have been selected. In *Orr v. Frank R. MacNeill & Son, Inc., supra,* though dealing with differential in pay because of sex, the evidence of discrimination was grounded in the statement made by Frank R. MacNeill that his son had said he would not pay a woman as much as he paid a man. In reversing the District Court's finding of discrimination the Court said the "facts show that the salary differences were based upon other reasons than the conjecture of MacNeill senior that MacNeill junior wouldn't pay a

802

woman as much as a man." [page 171]. That is the situation here. The evidence establishes without question that the selection of Wetters over plaintiff was based on qualifications. The defendant has shown a legitimate non-discriminatory reason for not selecting plaintiff. All that defendant has to do is "articulate some legitimate non-discriminatory reason," not "prove absence of discriminatory motive." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). This the evidence establishes. There is but one verdict the evidence would support on this issue. Plaintiff has not carried her burden.

C.

■ In her third claim plaintiff asserts her constitutional rights were violated, in that she was not given twelve months notice that she would not be rehired, in violation of the College handbook and regulations. At all times during plaintiff's employment at the College she served under "a temporary restricted appointment," which did not carry fringe benefits. Defendants' Exhibit 4. In fact, her employment was not for the same position or classified the same for each of her periods of service. Her contract for 1974–75 was Administrative Assistant for Intramural Sports; for 1975–76, Director of Women's Intramural Programs, during which period she was Women's Junior Varsity Basketball Coach; 1976–77, Acting Instructor of Physical Education for the full semester 1976–77—September 1, 1976 to January 15, 1977; and 1977–78, Intramural Director, Women's Basketball Coach and Bowling Instructor. At the time of her termination she was a part-time instructor and coach.

As is set out above, in early 1978 the College determined to create four new positions and make the position of Women's Basketball Coach a full-time job, with some additional duties. It duly advertised for applicants. Plaintiff filed her application, but was not selected. Not having been selected, she filed this action under 42 U.S.C. § 1983, claiming a violation of her constitutional rights. She asserted that she had not been given twelve months notice of an intention not to renew her contract of employment. Plaintiff's reply memorandum opposing defendants' motion for judgment n.o.v. in paragraph III sets forth—

The plaintiff admits that she was not tenured. As Judge Clarke points out in his Memorandum and Order,[9] this fact in itself means that plaintiff had no rights arising from the Constitution itself relating to due process. However, the Faculty Handbook [Plaintiff's Exhibit # 2] could be considered to grant plaintiff a property interest in her employment by virtue of the procedures set forth therein.

Judge Clarke ruled the question was one of fact. Throughout the period 1974 to 1978, plaintiff was paid as a part-time employee, except for the period between September, 1976 through January 15, 1977. Judge Clarke held in his opinion of July 1980, that "plaintiff had no right to notice and a hearing arising from the Constitution ... her employment did not amount to a 'property' interest in continued employment sufficient to trigger these constitutional protections." Page 6 of Clarke Opinion. He found and the plaintiff in her brief agrees, she relies on the provisions of the Handbook for her claim she is entitled to a twelve months notice that she will not be reemployed. Further, he held that the issue of whether plaintiff came within the provisions of the Handbook "is a factual matter which must be resolved at trial." Clarke Opinion page 7.

This action was prosecuted against Doctor Graves and Mrs. West, the President and Chairperson of the Women's Department of Physical Education, respectively, of the College. It has already been determined, and is not an issue here, that the College is not suable under this Count. The jury found there was no liability on Doctor Graves, but found against Mrs. West for a failure to give twelve months notice of an

---

9. Opinion and Order of Judge J. Calvitt Clarke of July 29, 1980, filed July 31, 1980, in this action, ruling on motion for summary judgment.

intention not to rehire. There is absolutely no evidence Mrs. West had anything to do with the execution of the contract for the hiring of plaintiff for the 1977–78 season. She is not the one who sent the notice to plaintiff that she had been selected for employment. The notice and terms of the contract were sent by Jack Edwards, Dean of the Faculty of Arts and Sciences. Plaintiff sent her acceptance to Edwards, and not West. Nor is there any suggestion in the evidence Mrs. West was the one having any responsibility to give a notice, even if one is required. Without such evidence, there is no basis upon which liability could be fixed on Mrs. West.

Judge Clarke had already found, and plaintiff agreed "that the plaintiff had no right to notice and a hearing arising from the Constitution itself," and "her tentative and restricted employment did not amount to a 'property' interest in continued employment sufficient to trigger these constitutional protections." [Opinion of Judge Clarke, page 6]. Further, Judge Clarke ruled that whether plaintiff fell in the class of persons referred to in the Handbook was a factual matter which should be resolved at trial.

The only evidence at trial on the issue was the testimony of Doctor Graves, the President of the College. He testified that temporary and restricted employees were hired for the specific periods of their contracts, and did not obtain fringe benefits enjoyed by other faculty members;[10] that they were not in the classification of tenured or probationary employees; and that temporary and restricted employees were not covered by the tenure, probationary and notice provisions of the Handbook. There was no evidence to the contrary. Plaintiff admits she was not tenured, nor entitled to any of the benefits of tenure, and did not understand the tenured system. She knew the position which she held for 1977–78 was being abolished, and a new position created. She made application for the new position. She was well aware that if she was selected for the new position, she would not be

reemployed for the 1978–79 school year in her old position. Hence, she had not considered herself subject to the notice provisions of the Handbook, for she never gave notice if she was selected for the new position, she could not serve in the old position. Inasmuch as she agrees she had no constitutionally protected property right, even if she is included in the notice provisions of the Handbook, and the College breached that condition, her only claim would be a state cause of action for breach of contract action against the College. The College being a state agency, and any action by Mrs. West being in her official capacity, she would not be personally liable under the evidence in this case. While the provisions of the Handbook "may create a right of action in the State Courts, it does not establish a property interest under the Fourteenth Amendment," for "every disagreement between a public employee with his employer over matters of state law or the terms of his contract does not reach constitutional proportions." *Sigmon v. Poe*, 564 F.2d 1093, 1096 (4th Cir. 1977). *See also Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *Berry v. City of Portsmouth*, 562 F.2d 307 (4th Cir. 1977). Section 1983 does not provide a remedy for common law torts. *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974).

▆▆▆ To recover damages under § 1983, plaintiff has the duty to show a violation of the 14th Amendment and involvement by the State. *Great American Federal Savings & Loan Ass'n. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (1979), concurring opinion of Justice Stevens.

▆▆▆ Plaintiff has grounded her claim in Count III in § 1983. To recover against Mrs. West under § 1983, plaintiff must show "personal involvement of Mrs. West . . . (and) in the absence of such personal involvement . . . (she) is not liable under § 1983." *Vinson v. Richmond Police Department*, 567 F.2d 263, 265 (4th Cir. 1977)

---

10. The letter contract set forth this fact.

[*vacated on other grounds*, 438 U.S. 903, 98 S.Ct. 3120, 57 L.Ed.2d 1145]. *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561. The dissenting opinion in *Rizzo* said that the Court there asserts that "a state official is not subject to the strictures of 42 U.S.C. § 1983 unless he directs the deprivation of constitutional rights." 423 U.S. 384, 96 S.Ct. 610. If the failure to give notice was negligence, an action therefor is not maintainable under § 1983, for § 1983 covers wilful violations.

■ Further, Mrs. West has pled good faith. The evidence establishes that the College has interpreted the provisions of the Handbook regarding notice as not applying to persons like plaintiff. This was the policy set by the President. Mrs. West was therefore following the policy established by the College, and therefore acting in good faith. No evidence to the contrary was shown. She is therefore not liable in damages under § 1983. *Procunier v. Navarette*, 435 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

It is not here intended to make a determination of any rights the plaintiff may have against the College for any alleged breach of contract. What is held is that there is no cause of action proven against Mrs. West under § 1983.

### III

■ Plaintiff has asked for the allowance of counsel fees. However, to be entitled to the recovery of counsel fees, plaintiff must prevail on, at the least, some of her claims. She has not prevailed, and therefore is not entitled to recover counsel fees.

The verdict of the jury is set aside and the judgment previously entered thereon is vacated, and judgment is entered for defendants.