Robert L. COLLIN, Plaintiff,

v.

**RECTOR AND BOARD OF VISITORS OF the UNIVERSITY OF VIRGINIA, et al., Defendants.**

Civ. A. No. 93–0074–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Jan. 3, 1995.

Margaret McLeod Cain, Charlottesville, VA, for plaintiff.

James S. Gilmore, III, Office of the Atty. Gen., Richmond, VA, Earl C. Dudley, Jr., Office of the Gen. Counsel, Charlottesville, VA, James J. Mingle, General Counsel's Office, Charlottesville, VA, Beth C. Hodsdon, Charlottesville, VA, for defendants.

## *MEMORANDUM OPINION*

MICHAEL, District Judge.

█ This case involves several claims of discrimination asserted against the Rector and Board of Visitors ("the Board") of the University of Virginia ("UVA") and certain Deans and faculty members of the UVA School of Architecture, Department of Urban Planning (also "Department"), by Plaintiff Collin pursuant to Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. The court referred this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, pursuant to a standing order, for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his Report and Recommendation on October 26, 1994, recommending dismissal of the Title VII claims against the Defendants sued in their individual capacities, the § 1981 claims, and the § 1983 First Amendment claims. On November 7, 1994, the Defendants filed Objections to the Report. On November 9, Plaintiff Collin filed Objections. Said Objections having been lodged in a timely and appropriate manner, this court is required to undertake a *de novo* determination. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir. 1982). After *de novo* review of the record in this case, the court grants the Defendants' Motion to Dismiss in part and denies the Motion in part, in accordance with this Opinion.

## I. FACTUAL BACKGROUND

█ The following is a summary of the facts as alleged in the complaint, which for purposes of a motion to dismiss must be taken as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* — U.S. —, —, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993).

Plaintiff Collin is a white man who began working for the Department of Urban Planning of the UVA School of Architecture in 1987. His direct supervisor was Dr. William Harris, an African–American man who is suing the Department of Urban Planning for race-based discrimination in another case in this court. Collin married an African–American woman in New Zealand in 1989. When he returned to UVA in the fall of 1989 he was unanimously reappointed to his position as Assistant Professor.

Collin conducted a fair housing study of the West Main Street area in 1989, in which he and his students examined issues of racial discrimination in the Charlottesville housing market. Collin met with UVA counsel James Mingle about the study before it reached completion. A student working on the study complained that Mingle interfered with students' efforts to conduct fair housing testing. In 1992 Collin and his students were "forbidden" from communicating with the West Main Street community by Dean Harry Porter.

During the 1989 period, a secretary spoke of African–Americans in racist terms to Collin and he reprimanded her. When he requested that she copy the fair housing report the next day, she refused. Collin filed a complaint against her for racially motivated insubordination. Department authorities told Collin to drop the complaint or be charged with harassment. After Collin discussed the incident with the President of UVA, Dean Porter informed him that he would not receive research support. Collin claims that he received the lowest amount of research support among the junior faculty in the Department, and that his office was moved in violation of Collin's employment contract. Collin also claims that he suffered missing mail and telephone messages, stem-

ming in part from hostility caused by his opposition to racist speech.

Furthermore, Collin chaired a search committee in the Department in 1989. He developed a minority outreach program that was not implemented and, as a consequence of his 'efforts to encourage diversity, was removed from his position. Thereafter, he overheard members of the committee make racist statements about minority candidates. In addition, Collin supported the unsuccessful bid of Dr. Harris for the chairmanship of the Department. Collin spoke on Harris's behalf at faculty meetings. Collin observed a "secret petition" passed around to deny Harris the post.

The Department of Urban Planning denied Collin tenure in 1992. This suit ensued. Collin filed a Title VII complaint with the Equal Employment Opportunity Commission ("EEOC") naming the Board and the School of Architecture. The EEOC later issued the Plaintiff a right to sue letter. Collin claims that he was subjected to an altered tenure review process, on the basis of his "race and race-related associations," and that the Defendants retaliated against him for lodging race-related complaints. The racist slur by the secretary, the interference with his fair housing study, and the retaliation imposed by the Deans, reflected a hostility to Collin caused by his marriage to an African–American woman and his advocacy of African–American causes, according to his complaint.

Collin also claims related deprivations under § 1981 and § 1983. Under § 1981 he claims that he was denied the same opportunity to enter into contracts as other whites because of his marriage to an African–American woman, his other race-related associations, and his opposition to race-related unlawful employment practices. Under § 1983 he claims that he was retaliated against for his advocacy of minority recruitment and minority-related scholarship, and for his race-conscious community work, in violation of his First Amendment rights. He also asserts under § 1983 that the Defendants violated his constitutional right to equal protection.

## II. ANALYSIS

### A. Counts I and II: Title VII

Under Counts I and II Collin alleges that the University and its agents denied him tenure on the basis of his "race and race-related associations," and retaliated against Collin for opposing unlawful employment practices. Collin does not contest the fact that all Title VII claims should be dismissed against the Defendants insofar as the Defendants are sued in their personal capacities. The Defendants do not contest the fact that the complaint properly states claims under Title VII against the Board (referred to in Counts I and II as "the University"), and against Dean Porter in his official capacity.

Defendants Collins, Spain, Dotson, Phillips, and Lucy were not named in the EEOC complaint. Accordingly, the claims against these Defendants must be dismissed. *See* 42 U.S.C. § 2000e–5(f)(1). The claims against Dean Porter in his official capacity may be maintained, however, because he is substantially identified with the Department of Urban Planning, and the Department of Urban Planning was named in the EEOC complaint along with the Board. *See Brewster v. Shockley*, 554 F.Supp. 365, 367 (W.D.Va.1983) (exception to requirement that Defendant be named in EEOC complaint where named and unnamed Defendants are substantially identical or are in agency relationship); *see also Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457, 461 (4th Cir.1988) (noting adoption of substantial identity exception by district courts in the Fourth Circuit without addressing validity of doctrine). On this basis, the court adopts the Magistrate's recommendation that the Defendants' motion to dismiss the claims in Counts I and II against Defendants Collins, Spain, Dotson, Phillips, and Lucy be granted, but that the motion to dismiss the claims against Defendants the Board, the Department, and Porter be denied.

### B. Counts III–V: 42 U.S.C. § 1981 and § 1983 Claims Against the Board, the Department, and Porter in his official capacity [1]

The court must first consider whether the Board and the Department are entitled to absolute Eleventh Amendment immunity from suit in federal court. This court has previously determined that UVA is a state agency entitled to absolute immunity. *Wilson v. University of Virginia,* 663 F.Supp. 1089, 1092 (W.D.Va.1987). Clearly the Department is an arm of the University and thus enjoys the same Eleventh Amendment immunity from suit as the University as a whole. The only question that requires more discussion is whether the suit against the Board is the equivalent to a suit against UVA. This question must also be answered in the affirmative.

"In order to determine whether a suit against a state agency is in reality a suit against the state, the court 'must examine the particular entity in question and its powers and characteristics as created by state law.'" *Muhammed v. Board of Supervisors of Southern University,* 715 F.Supp. 732, 733 (M.D.La.1989) (quoting *Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 131 (5th Cir.1986)). Whether the agency has the authority to sue and be sued or to hold and convey property, the source and extent of the agency's management authority, and the source of the agency's funds are important considerations. *Id.*

The Code of Virginia establishes the Board as the governing body of the University. Va.Code Ann. Art. 2. The Board is a corporation that manages the affairs of the University under the name "the Rector and Board of Visitors of the University of Virginia." Va.Code Ann. § 23–69. The Board is under the control of the General Assembly, § 23–69, and its members are appointed by the Governor, § 23–70. The Board has supervisory control over the affairs of the University and has the power to hold and convey property. §§ 23–76, 77.1.

The Board's status under Virginia law is the same as any other state agency. *Cf. Muhammed,* 715 F.Supp. at 733 (finding university board the equivalent to a state agency). Accordingly, since Collin has not sued each individual member of the Board of Visitors in an official capacity, or in an individual capacity, but rather has sued the Board as a body, the suit against the Board must be dismissed. *See Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683, 102 S.Ct. 3304, 3313–14, 73 L.Ed.2d 1057 (1982) (Eleventh Amendment bars suits against state agencies as named parties in federal court unless state has waived immunity).

This leaves the claim against Defendant Porter in his official capacity as Dean. The only claims against Defendant Porter in his official capacity that may be maintained consistent with the Eleventh Amendment are claims for declaratory or prospective injunctive relief. *See Edelman v. Jordan,* 415 U.S. 651, 663–64, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Treasure Salvors,* 458 U.S. at 689–90, 102 S.Ct. at 3317 (court must look to whether relief is retroactive award, and thus barred by the Eleventh Amendment, or is permissible prospective relief). Accordingly, the claims against Defendant Porter in his official capacity under Count III must be dismissed insofar as Collin seeks relief in the form of money damages. *Edelman,* 415 U.S. at 662, 94 S.Ct. at 1355.

To obtain such relief, Collin must allege that Defendant Porter intentionally violated Collin's rights. *See Jacobs v. College of William and Mary,* 517 F.Supp. 791, 803 (E.D.Va.1980) (must show personal involvement in denial of rights under § 1983), *aff'd,* 661 F.2d 922 (4th Cir.), *cert. denied,*

---

1. The court construes the inartful reference to "the University and its agents" in Counts III–V as referring to the Board, the Department, and Defendant Porter sued in his official capacity. The complaint names the Board of Visitors of the University of Virginia and the Department of Urban Planning as Defendants, not "the University." Defendant Porter is sued in his personal capacity under Counts IV and V, but since the complaint does not clearly allege the capacity in which he is sued under Count III; *see* Complaint ¶¶ 11, 54–56; the court must assume that he is only sued in his official capacity as Dean with respect to the § 1981 claims under Count III. *See Kolar v. County of Sangamon,* 756 F.2d 564, 568–69 (7th Cir.1985) (official capacity status presumed in absence of allegations that defendant is sued in personal capacity). All references to Defendant Porter in his official capacity refer to the claims against him in Count III only.

454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981); *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979) (to hold officials liable under § 1981 and § 1983 plaintiff must allege acts, practices, or policies that caused deprivation). The Plaintiff must allege direct involvement by Defendant Porter because there is no respondeat superior liability under either § 1981 or § 1983. *Jett v. Dallas Independent School District,* 491 U.S. 701, 731, 109 S.Ct. 2702, 2720–21, 105 L.Ed.2d 598 (1989).

■ Though Collin must allege that Defendant Porter directly violated his rights, Collin is not held to a heightened pleading standard, as urged by the Defendants. The Supreme Court's *Leatherman* decision rejected the heightened pleading standard employed by some courts in *Monell*-type suits against municipalities, primarily because municipalities do not enjoy the immunity defenses afforded to individual capacity defendants. — U.S. at ——, 113 S.Ct. at 1162; *see also Jordan by Jordan v. Jackson,* 15 F.3d 333, 339 (4th Cir.1994) (after *Leatherman* claim of municipal liability does not require pleading multiple incidents of unconstitutional conduct). The importance of qualified immunity to state actors sued in their individual capacities led the Court to suggest, without so holding, that a heightened pleading standard may be justified in personal capacity suits under the Civil Rights Acts. *Id.*[2] The Court recognized the importance of detailed pleading to the ability of state officials to mount immunity defenses early in litigation and distinguished municipalities from individual capacity defendants in this regard, since municipalities have no recourse to such immunity defenses. *Id.* Since official capacity defendants, like municipalities, have no recourse to the qualified immunity defenses afforded under *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), there is nothing in § 1981 or § 1983 that justifies a more stringent pleading requirement against Defendant Porter, in his official capacity, in this case.

■ With these standards in mind, the court turns to the allegations in Count III against Defendant Porter. Collin alleges that he sought tenure, was qualified, and that Defendant Porter was one of the final decisionmakers in a process that denied Collin tenure, after considering issues other than merit, on the basis of Collin's "race and race-related associations." Since Collin is not required to "detail the facts underlying his claims," *Jordan by Jordan,* 15 F.3d at 339, and has, in any case, stated instances of alleged racial hostility preceding the tenure denial, such allegations are sufficient to state a claim under Count III against Defendant Porter.

**C. Counts III–V: Whether Collin is Held to a Heightened Pleading Standard in his Claims Against the Individual Capacity Defendants Under 42 U.S.C. § 1981 and § 1983**

■ The Defendants' argument that Collin should be held to a pleading standard in his claims against the individual capacity Defendants under § 1981 and § 1983 that is more demanding than the Title VII pleading standard is unpersuasive. The difference in the pleading requirements between Title VII on the one hand, and § 1981 and § 1983 on the other, arises from the fact that there is no respondeat superior liability under § 1981 or § 1983. *See Jett,* 491 U.S. at 731, 109 S.Ct. at 2720–21 (damages remedies under § 1981 and § 1983 coextensive and do not impose respondeat superior liability). The § 1981 and § 1983 cases cited by the Defendants in support of their argument that detailed allegations of personal involvement are required were primarily decided on a respondeat superior basis. The cases involved claims against superior officials that contained *no* allegations showing how those officials were involved in violations of constitutional rights. *See Jacobs,* 517 F.Supp. at 803; *Hirst,* 604 F.2d at 847. Since there are

---

2. See also *Jordan by Jordan,* 15 F.3d at 339 n. 5, wherein the Fourth Circuit noted that "we express no view on the question as to which the Supreme Court in *Leatherman* expressed no view but seemed almost to suggest might be answered in the affirmative, of 'whether [its] qualified immunity jurisprudence would require a heightened pleading standard in cases involving individual government officials' " (citing *Leatherman,* — U.S. at ——, 113 S.Ct. at 1162).

allegations of personal involvement here, those cases do not help the Defendants.

While the Fourth Circuit noted ·that the Supreme Court *suggested* that a heightened pleading standard might be justified in individual capacity suits under the Civil Rights Acts, neither Court has so held. *See Jordan by Jordan,* 15 F.3d at 339 n. 5. Other courts have rejected such a heightened standard in individual capacity cases in the wake of *Leatherman. See Hall v. Dworkin,* 829 F.Supp. 1403, 1409 n. 5 (N.D.N.Y.1993) (rejecting heightened pleading standard in individual capacity suit and citing cases).

*Elliott v. Perez,* 751 F.2d 1472 (5th Cir. 1985), is the Fifth Circuit case that originally adopted the heightened pleading standard rejected in *Leatherman. Perez* based the court's authority to adopt such a standard on Fed.R.Civ.P. 12(e), which provides, in pertinent part, as follows:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

*See Perez,* 751 F.2d at 1482. The Fifth Circuit did not explain how the provisions in Rule 12(e) grant a court the authority to require a more definite statement *sua sponte.* It would be more consistent with the provisions in the Rules, and equally attentive to the interests of defendants who may wish to impose immunity defenses, for the court to require specificity only after a defendant has made a Rule 12(e) motion. Then the court will have before it the "the defects complained of and the details desired," Rule 12(e), and will best be able to balance the notice pleading standards of Rule 8 with the doctrine of qualified immunity, in a way that is consistent with the Federal Rules.

Since the Defendants have not made a motion for a more definite statement, the court is only faced with the question of whether the allegations in the complaint satisfy the notice pleading requirements of Rule 8. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), and there is no requirement that Collin "detail the facts underlying his claims," *Jordan by Jordan,* 15 F.3d at 339.

### D. Count III: 42 U.S.C. § 1981 Claims Against the Individual Capacity Defendants

Defendants Lucy, Phillips, Dotson, Collins, Spain, and Beatley are sued in their individual capacities under § 1981. Complaint ¶ 5–10. The Magistrate Judge recommended that all of the § 1981 claims be dismissed on the basis of Collin's confused concession at oral argument that Count III could not survive this court's ruling in *Harris v. Rector and Board of Visitors of the University of Virginia,* No. 93–0025–C, 1993 WL 513295 (W.D.Va. Nov. 18, 1993) (mem. op.). Collin has now submitted an objection to the Report, reversing the position he took at oral argument, and arguing that Count III should remain.

 As this court ruled in *Harris,* § 1981 protects against acts of governmental and nongovernmental discrimination in the making and enforcing of contracts. The law prohibits all racially discriminatory interference with an individual's right to form a contract, and the Defendants may be held liable irrespective of the fact that they may not have been acting under color of state law. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989); *Runyon v. McCrary,* 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976). Where a fellow employee intentionally interferes with the right of a coworker to make or enforce a contract with the employer and that interference is based on illegal discrimination, the employee's conduct is actionable under § 1981. *See Kolb v. Ohio Department of Mental Retardation & Developmental Disabilities,* 721 F.Supp. 885, 891–92 (N.D.Ohio 1989); *see also Tillman v. Wheaton–Haven,* 517 F.2d 1141, 1146 (4th Cir.1975) (corporate directors can be liable under § 1981 where they cause corporation to intentionally infringe protected rights).

 The complaint states that Defendant Porter was one of the final decisionmakers in

the tenure review process, a process that Collin alleges was "altered" to deny him tenure on the basis of race. The count further states that Defendants Lucy, Phillips, Dotson, Collins, Spain, and Beatley were "centrally involved in the decision to deprive the plaintiff of his rights...." Complaint ¶ 55. In line with this court's decision in *Harris,* these allegations against the individual capacity Defendants are sufficient to charge them with intentionally violating Collin's rights under § 1981.

### E. Count IV: 42 U.S.C. § 1983 First Amendment Claims

The Magistrate dismissed the First Amendment claims against the official capacity Defendants on the basis of the Eleventh Amendment, and dismissed the claims against the individual capacity Defendants on two alternative grounds: that the individual capacity Defendants were not acting under color of state law and that the recent case of *Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), requires Collin to plead inadequate procedural review of his discharge to state a First Amendment claim under § 1983. While the court agrees that the claims against the official capacity Defendants should be dismissed, for the reasons set forth above, the complaint properly states claims against the Defendants sued in their individual capacities under § 1983, including Defendants Porter, Lucy, Phillips, Dotson, Collins, Spain, and Beatley, for the reasons set forth below.

■ The court first addresses the Magistrate's recommendation that the complaint does not adequately allege that the individual capacity Defendants acted under color of state law. It is an elementary requirement of § 1983, of course, that any alleged deprivation be under color of law. *District of Columbia v. Carter,* 409 U.S. 418, 424, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973). State university faculty clearly act under color of state law when they exercise their authority to grant or deny tenure. *Smith v. Losee,* 485 F.2d 334, 338 (10th Cir.1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212

(1974).[3] Accordingly, if the complaint alleges that the Defendants exercised authority, conferred upon them by the state, over Collin's tenure review, then the complaint properly lays the groundwork for holding the Defendants liable as state actors.

■ The complaint is no model of clarity. Count IV refers to the "University and its agents," which led the Magistrate to conclude that none of the Defendants had been sued in their individual capacities under Count IV. Earlier in the complaint, however, Collin alleges that all of the individually named Defendants are sued in their personal capacities under § 1983, that the Defendants were employed by the Department of Urban Planning, and that they were acting under color of state law. Furthermore, Count IV alleges that the Defendants wrongfully denied Collin tenure by "h[olding] Plaintiff to a different standard of review, and consider[ing] issues other than merit in Plaintiff's tenure deliberations." The Defendants could not have conspired to deny Collin tenure unless the Defendants possessed some state authority over hiring decisions. While Collin will have to adduce evidence to support his allegations that the individually named Defendants had such authority, the claims should not be subject to a motion for dismissal on the ground that the Defendants did not act under color of state law.

■ The court turns next to the Magistrate's suggestion that *Waters* requires Collin to allege that the administrative grievance process Collin utilized at UVA was either unreasonable or pretextual to avoid the conclusions reached in the process from becoming conclusive on the federal courts. To analyze this contention, the court must first outline the well-established elements of a First Amendment retaliation claim. Beyond the state action requirement, to establish a cause of action for retaliatory discharge on the basis of speech, a petitioner must meet a three-pronged test. *Holland v. Rimmer,* 25 F.3d 1251, 1254 (4th Cir.1994) (citing *Huang v. Board of Governors,* 902 F.2d 1134, 1140 (4th Cir.1990)). Collin must first show that

---

**3.** Due to this fact, the complaint in this case states a claim against the individual faculty colleagues as acting under color of state law, whereas the complaint in *Harris, supra,* did not.

he engaged in speech on a matter of public concern. *Id.* Second, Collin must demonstrate that the alleged retaliatory action deprived him of some valuable benefit. *Id.* And third, Collin must show a causal "but for" relationship between the protected speech and the retaliatory action. *Id.*

■■ Collin has satisfied these basic elements. Collin has alleged that the Defendants acted under color of state law. The Defendants have conceded for purposes of this motion to dismiss that Collin adequately alleges that he engaged in protected speech. Furthermore, the complaint alleges that the Defendants denied Collin tenure, which is clearly the deprivation of a valuable benefit. Finally, the complaint alleges that the Defendants denied Collin tenure on the basis of his protected speech, which satisfies the "but for" causation element.

■■ Despite the fact that Collin satisfied these basic requirements, the Magistrate recommended granting the motion to dismiss because the Magistrate concluded that the *Waters* decision adds an element to First Amendment claims, requiring Collin to allege the inadequacy of any administrative review he received. The Magistrate agreed with the Defendants' argument that *Waters* precludes, wholesale, any relitigation of First Amendment claims in the federal courts, after a state employer conducts an administrative review of its own employment decision, absent allegations of pretext or procedural inadequacy. The court agrees with the Magistrate that *Waters*, a plurality decision, is somewhat confusing. However, in light of the well-established elements of a First Amendment retaliation action outlined above, this court cannot agree that *Waters* reached such an anomalous result.

*Waters* dealt with a narrow question: whether the test in *Connick v. Meyers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), for determining whether speech is protected "should be applied to what the government employer thought was said, or to what the trier of fact ultimately determines to have been said." *Waters,* —— U.S. at ——, 114 S.Ct. at 1882. The case dealt with one element of the retaliation inquiry: whether an employee's speech is protected.

The employer in *Waters* fired the plaintiff on the basis of hearsay statements by a co-worker that characterized the plaintiff as making disparaging and disruptive comments about the workplace. *Id.* at —— — ——, 114 S.Ct. at 1882–83. The plaintiff sued her employer, alleging that her comments were on matters of public concern and that therefore she was wrongfully discharged. *Id.* at ——, 114 S.Ct. at 1883.

After the District Court granted summary judgment to the defendants, ruling that the plaintiff's speech was unprotected, the Seventh Circuit reversed. *Id.* at —— — ——, 114 S.Ct. at 1883–84. The Circuit Court held that the speech was protected, and, most importantly, that the *Connick* inquiry should turn on what the trier of fact determines the content of the speech to be rather than on the employer's mistaken belief about the content of the speech. *Id.* at ——, 114 S.Ct. at 1884. The Supreme Court then overruled the Circuit Court, with Justice O'Connor writing a plurality opinion that nonetheless speaks for a majority of the Court, *see id.* at ——, 114 S.Ct. at 1893 (Souter, J., concurring), holding that courts should apply the *Connick* test "to the facts as the employer thought them to be" if the employer conducts a reasonable inquiry into the content of the speech and acts in good faith. *Id.* at ——, 114 S.Ct. at 1888.

■■ Contrary to the Defendants' contentions, *Waters* does not broadly preclude the issues that can be adjudicated in a federal court after an employer makes such a reasonable inquiry. *Waters* has no bearing on the causation aspect of a retaliation claim since the case dealt solely with the first prong of the retaliation test, which requires a claimant to establish the protected nature of speech. *Id.* at ——, 114 S.Ct. at 1882. Where, as here, there is no dispute that an employee's speech is protected and that the employer correctly understood the content of the employee's speech, *Waters* is inapposite. Where there is no question about the protected nature of speech under *Connick,* the question for the court then becomes whether the employer fired the employee because of that speech. An employer cannot immunize

itself from federal court review of this question absent issue preclusion. This requires more than a *Waters*-style reasonable review; it requires state court adjudication or administrative review with procedures that are sufficient to lend preclusive effect to the decision of the reviewing agency. *See University of Tennessee v. Elliott,* 478 U.S. 788, 794, 798, 106 S.Ct. 3220, 3223–24, 3226, 92 L.Ed.2d 635 (1986) (extending doctrine of issue preclusion to "administrative bodies acting in a judicial capacity"); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (outlining procedural standards of adjudication that are prerequisite to issue preclusion). Issue preclusion is not asserted as a defense in this case.

Based on the analysis above, the court does not find *Waters* applicable to this case. Accordingly, the Defendants' motion to dismiss the Plaintiff's First Amendment claims under Count IV against Defendants Porter, Lucy, Phillips, Dotson, Collins, and Spain, on the basis of *Waters,* must be denied.

### F. Count V: 42 U.S.C. § 1983 Equal Protection Claims

Count V charges the Defendants with violating Collin's right to equal protection by discriminating against him on the basis of his "race and race-related associations." The count further alleges that the Defendants sued in their individual capacities, including Defendants Porter, Lucy, Phillips, Dotson, Collins, Spain, and Beatley, discriminated against Collin by altering the tenure process and denying Collin tenure on the basis of race. The count also alleges that Defendant Porter later discriminated against Collin by giving Collin's grievance unequal treatment. Complaint ¶ 60–61 (incorporating factual allegations in first 59 paragraphs of the complaint).

The Board and the Department of Urban Planning must be dismissed as Defendants for the reasons set forth earlier in this Opinion. However, the court agrees with the Magistrate that the allegations against the individual capacity Defendants state claims under Count V and that the Defendants' motion to dismiss should be denied in this regard. The complaint alleges a specific act of discrimination, centering around Collin's denial of tenure, and alleges that the above-named individual-capacity Defendants sued in Count V each participated in the alleged constitutional deprivation. Such allegations are all that is required.

### III. SUMMARY

For the reasons set forth above, all claims against the individual capacity Defendants shall be dismissed under Counts I and II (Title VII). All claims against the Board and the Department shall be dismissed under Counts III–V (§ 1981 and § 1983), except the claims against Defendant Porter in his official capacity under Count III (§ 1981) for those forms of prospective non-monetary relief that are consistent with the Eleventh Amendment. All claims against the individual capacity Defendants under Counts III–V shall remain.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

### ADJUDGED AND ORDERED

that Defendants' Motion to Dismiss shall be, and it hereby is, granted in part and denied in part, as follows:

1) All claims against Defendants Lucy, Phillips, Dotson, Collins, Spain, and Beatley under Counts I and II shall be, and they hereby are, dismissed;

2) All claims against Defendants Rector and Board of Visitors of the University of Virginia under Counts III–V shall be, and they hereby are, dismissed;

3) All claims against the School of Architecture, Department of Urban Planning under Counts III–V shall be, and they hereby are, dismissed;

4) All claims under Count III against Defendant Porter in his official capacity for retroactive monetary relief inconsistent with the Eleventh Amendment shall be, and they hereby are, dismissed;

5) Defendants' Motion to Dismiss shall be, and it hereby is, denied as to all other Defendants and claims.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.