Dan **PHILLIPS**, Plaintiff,

v.

Larry **MABE**, in his personal and individual capacity; Donald Whitt, in his personal and individual capacity, Defendants.

No. 1:04 CV 00198.

United States District Court, M.D. North Carolina.

Feb. 28, 2005.

Alan McSurely, Susan Ashley Osment, Chapel Hill, NC, for Plaintiff.

Donna R. Rascoe, Mark Allen Davis, Raleigh, NC, for Defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

This matter is a civil rights action arising out of Plaintiff Dan Phillips' ("Plaintiff" or "Phillips") employment as a law enforcement officer who was stationed as a Student Resource Officer ("SRO") at two Chatham County High Schools. Plaintiff's term as SRO took place during the time that Defendant Larry Mabe ("Mabe") was Superintendent of the Chatham County Schools. Plaintiff served as a law enforcement officer under the command of Defendant Donald Whitt ("Whitt"), who was Sheriff of Chatham County until he resigned at the end of November 2000. Plaintiff was fired by Whitt's successor, Sheriff Ike Gray, on January 16, 2001. Plaintiff alleges that Mabe and Whitt violated Plaintiff's constitutional rights under the Fourteenth Amendment's guarantees of equal protection and due process brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. Plaintiff further alleges that Mabe and Whitt established a conspiracy to punish Plaintiff, who is white, for wanting to participate in an investigation of a racially hostile environment against black students at Chatham Central High School. In response, Mabe and Whitt have each filed Motions to Dismiss [Document Nos. 8 and 2, respectively] Plaintiff's Complaint. Plaintiff has filed a Response to both of these Motions to Dismiss, and both Mabe and Whitt have filed a Reply. Plaintiff also has filed a Motion to Strike Defendant Whitt's Reply [Document # 17]. Thus, these Motions are ripe for review.

## II. FACTUAL ALLEGATIONS

Taking the facts in a light most favorable to Plaintiff, as the Court must do when considering a Motion to Dismiss, the following is an abbreviated account of the record in this case. Plaintiff alleges that he was employed for four and a half years by the Chatham County Sheriff's Department prior to his firing on January 18, 2001. At some point, Plaintiff was assigned by Defendant Whitt to serve as an SRO at Chatham Central High School ("CCHS"), where he was expected to perform criminal law enforcement duties within the school. Just before the May 1999 graduation at CCHS, a series of racially

hostile acts were allegedly committed at the school. Pictures of black students with nooses around their necks were drawn in school bathrooms, students celebrated a senior "slave day," and racially hostile pictures were allegedly published in the school yearbook. John Glover, then principal of CCHS, tried to discipline a group of white students. Those students appealed their discipline, and it was overturned. Subsequently, Defendant Mabe as Superintendent of Chatham County Schools demoted Glover from principal to teacher, and transferred him to another school. In response to these actions against Glover, black students and parents organized a county-wide organization called Correcting Racial Injustices for Success in Society ("CRISIS"). This group then complained about Defendant Mabe to the U.S. Department of Education's Office of Civil Rights ("OCR"), which began an investigation into the matter. Defendant Mabe appointed William J. Fowler ("Fowler") as the new principal at CCHS.

In August 1999, Fowler allegedly told Plaintiff that Defendant Mabe had assigned him to the school for the purpose of straightening out the school and not to "take anything off any of these Niggers, but be damn sure before I got rid of them that I built a good case." Plaintiff alleges that in subsequent months, Fowler continued to make racially discriminatory comments to him, which offended Plaintiff. In December 1999, Fowler told Plaintiff that "All Niggers Must Die" had been written on the wall at CCHS, but that he, Fowler, had already erased the statement prior to any photograph being taken. During the following months, Plaintiff told his supervisor, Defendant Whitt, about Fowler's statements and the other acts against black students at the High School. Defendant Whitt allegedly told Plaintiff that he didn't "want to hear a damn thing you have to say." (Pl.'s Compl., at 3.) Also during that winter, investigators from

OCR visited CCHS to gather evidence as to the environment, and Plaintiff tried to provide evidence to them as to the environment at the school. Plaintiff alleges that Defendant Whitt learned of Plaintiff's desire to become involved with the OCR investigation and told him to "cease those activities" unless those activities related to law enforcement or investigating a crime. (Id.) Plaintiff alleges that Defendants Whitt and Mabe were aware of Fowler's allegedly racist attitude and did not want OCR to know of it. Plaintiff further alleges that Defendants Whitt and Mabe plotted together to cover up Fowler's actions. Defendants also targeted Plaintiff with a "campaign of intimidation" and ultimately they planned to discharge Plaintiff after OCR's investigation ended. (Id. at 4.)

In the spring of 2000, Defendant Whitt transferred Plaintiff to a different high school. Plaintiff was replaced by David Seagroves ("Seagroves") at the SRO position at CCHS. Fowler allegedly continued making racist comments, but said them to Seagroves and not to Plaintiff. In July 2000, an audiotape containing excerpts of Fowler's voice was given to Rick Givens ("Givens"), the Chair of the Chatham County Commissioners. This tape implicated Fowler in making racist statements. Givens wanted to ask Plaintiff questions about the tape, but was prevented from doing so by orders from Defendant Whitt, who allegedly told Plaintiff that he could not attend a meeting with the County School Board and the County Commissioners that was to discuss this matter. In any case, the result of that meeting was an order by the County School Board to Defendant Mabe to investigate the matter. Defendant Mabe allegedly conducted a superficial investigation, in which he failed to interview any black students, the Plaintiff, or the current SRO, Seagroves. Mabe reported back to the County School Board that there was nothing to the allegations against Fowler. Subsequently, Defendant

Mabe learned that Givens had a secret audiotape of Fowler making racist statements. When Mabe failed to take action against Fowler, Givens told other School Board members about the tape and played it for them. Allegedly, on August 25, 2000, after receiving a letter from Defendant Mabe that the action had been fully investigated and appropriate action taken, Givens told Defendant Mabe he was going to involve N.C. Gov. Jim Hunt, N.C. Sen. Howard Lee, and CRISIS leaders in the problem. Defendant Mabe then met with Fowler and agreed that Fowler would request immediate retirement as of September 1, 2000. Defendant Mabe and Fowler also allegedly agreed that Plaintiff would be punished for allegedly making the audiotape of Fowler. This allegedly was accomplished by Defendant Mabe giving the audiotape of Fowler to Defendant Whitt. Mabe, however, but did not ever divulge the tape or its existence to the OCR investigators.

In October 2000, Defendant Whitt began an internal affairs investigation of Plaintiff, and also investigated Seagroves, to determine who had taped Fowler. Plaintiff was interviewed by internal affairs on November 8, 2000 about the audiotape and about Fowler's racist statements to him. Defendant Whitt resigned as Sheriff at the end of November 2000. He was succeeded by Ike Gray ("Gray") as Sheriff. In December 2000, Gray allegedly told a School Board member that he was under pressure to find out who had made the audiotape of Fowler, and that he would punish the responsible person. OCR continued its investigation of CCHS until December 21, 2000, when investigators stated in a letter that due to no more racial incidents at CCHS, there was insufficient evidence to find a violation of Title VI of the Civil Rights Act. OCR allegedly had never been informed of the existence of the audiotape or the disposition of former principal Fowler. On January 18, 2001, Plaintiff alleges that Gray fired Plaintiff for a "pretextual reason." (*Id.* at 8.)

Plaintiff alleges that Defendants Mabe and Whitt entered into a conspiracy with Gray to have Plaintiff fired, because Plaintiff wanted to speak out against racism at CCHS. Plaintiff alleges he was not fired by Defendant Whitt prior to Whitt's retirement because of Defendant Whitt's fear that Plaintiff would go to the OCR investigators with the audiotape while the investigation was still open. Therefore, Plaintiff alleges that Defendants Mabe and Whitt relied on Gray to finish the conspiracy they had started to punish Plaintiff.

### III. MOTION TO STRIKE

■ Plaintiff has filed a Motion to Strike Defendant Whitt's Reply Brief [Document #17]. Under Local Rule 7.3(h), a Reply brief must be filed within ten days after service of the Response, and is limited to "discussion of matters newly raised in the Response." In his Motion, Plaintiff argues that Defendant Whitt raised a new issue by titling his Reply Brief "In Support of Defendant Whitt's Motion for Summary Judgment" rather than referring to it as a Reply Brief in Support of Defendant Whitt's Motion to Dismiss. Specifically, Plaintiff objects to Defendant Whitt raising the issue of whether Plaintiff's claims are time-barred and the issue of whether Plaintiff's claims are "sufficient to give rise to a cause of action since they did not constitute a tangible deprivation of Plaintiff's rights." (Pl.'s Mot. Strike, at 3.)

Defendant Whitt filed a Memorandum [Document #20] opposing Plaintiff's Motion to Strike. Whitt argues in that Memorandum that he inadvertently titled his Reply Brief "Motion for Summary Judgment" as opposed to "Motion to Dismiss," and would have this Court read it as a Reply Brief supporting his Motion to Dismiss. Furthermore, Whitt argues that his

Motion to Dismiss included the issue of whether Plaintiff's claims are time-barred, so that issue is not new (Def. Whitt's Mot. Dismiss, at 2–3.), and that Defendant Whitt's argument in his Reply as to time-barred claims was included to rebut Plaintiff's argument in his Response regarding whether claims were time-barred. Additionally, Defendant Whitt argues that, contrary to Plaintiff's assertions, Plaintiff did raise additional issues in the Response that could then be raised by Defendant Whitt in the Reply.

The Court notes that Defendant Whitt's Motion to Dismiss included the argument that "Plaintiff cannot show a tangible harm attributable to Defendant Whitt." (Def. Whitt's Mot. Dismiss, at 4.) The Court finds that this argument is sufficiently similar to the argument that Plaintiff objects to in Whitt's Reply, that is, that Plaintiff's claims do not constitute a tangible deprivation of Plaintiff's rights. Furthermore, the Court finds that Plaintiff's Response argued that the claims were not time-barred (Pl.'s Response, at 4–15.) but failed to respond to the question of whether Plaintiff suffered a "tangible harm" at the hands of Defendant Whitt.

The Court finds that Defendant Whitt's Reply brief was misnamed, but that is not enough to strike the Reply, particularly as it specifically discusses Defendant's arguments under Federal Rule of Civil Procedure 12(b)(6). Furthermore, the Court finds that the Reply properly discusses matters raised by Plaintiff's Response. Therefore, Plaintiff's Motion to Strike is denied.

## IV. MOTIONS TO DISMISS

■■■ With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed "only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). Generally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (internal quotations omitted); *accord Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989)(internal quotations omitted).

Plaintiff brings claims against both Defendants under 42 U.S.C. §§ 1981, 1983, and 1985. The Court will now discuss each of these claims in turn, and in making this determination, the Court will discuss arguments raised by both Defendant Mabe and Defendant Whitt in their respective Motions to Dismiss. However, the Court will first address Defendant Whitt's argument that all of Plaintiff's claims are barred by the statute of limitations and should also be barred by judicial estoppel. These two arguments are without merit.[1]

---

1. Defendant Whitt also argues that Plaintiff cannot state a claim against him in his *official* capacity because of collateral estoppel and various other legal arguments under § 1983.

However, Plaintiff states in his Response to Defendant Whitt's Motion to Dismiss that he only brings claims against Defendant Whitt in

## A. Statute of Limitations and Judicial Estoppel

Plaintiff was terminated on January 18, 2001, and brought this lawsuit on January 16, 2004. In May 2004, the U.S. Supreme Court decided *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 161 L.Ed.2d 645 (2004), which held that if a plaintiff's claim was made possible by the Civil Rights Act of 1991, then that claim would be governed by a "catch-all" four-year statute of limitations period. *R.R. Donnelley & Sons Co.*, 124 S.Ct. at 1845. Claims that allege a wrongful termination would arise under the 1991 Act, in that they were made possible by that act. *Id.* at 1845–46. Therefore, Defendant Whitt's argument that the statute of limitations applies here because he retired in November 2000, which occurred more than three years before Plaintiff brought suit, is without merit. Plaintiff has four years to file suit under *R.R. Donnelley & Sons Co.*, and Plaintiff did so within that time period.

Defendant Whitt also argues that Plaintiff is judicially estopped from bringing these claims against him. Judicial estoppel is a prudential doctrine in which a party is precluded from adopting a factual position that is inconsistent with a stance taken in prior litigation. *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir.1996). However, the Court finds that it is not an inconsistent factual position for Plaintiff to argue that he was fired by Sheriff Gray in an earlier state court action, and then argue in this Court that the former sheriff, Defendant Whitt, and the school superintendent, Defendant Mabe, conspired with Gray to terminate Plaintiff. Therefore, Defendant Whitt's arguments as to judicial estoppel are without merit.

## B. 42 U.S.C. § 1981

Plaintiff first alleges that Defendants' actions to cause his discharge are actionable under 42 U.S.C. § 1981. Specifically, Plaintiff alleges that Defendants were motivated by improper racial motives against Plaintiff, who is white, but who was standing in the black students and parents shoes when he tried to resist racial hostility at the High School. Plaintiff alleges that Defendants' conduct violated both his employment contract and his ability to give evidence to federal investigators.

Section 1981 provides that "all persons shall have the same right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. As amended by the Civil Rights Act of 1991, § 1981(b) provides that the term "make and enforce contracts" includes "the making, performance, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

While Plaintiff does not specifically label it as such, it is clear that Plaintiff accuses Defendants Mabe and Whitt of *retaliation* based on his actions in favor of the Black students, and not of direct racism against him because of his white race.[2] Defen-

---

his *individual,* personal capacity. As such, the Court need not address those arguments further. (Pl.'s Resp. Def. Whitt's Mot. Dismiss, at 4.)

**2.** While Plaintiff does not specifically call his claim retaliation, Plaintiff does state in his Complaint that Defendant Whitt was angry at Sgt. Phillips for getting "involved" in this "school business" and that "Defendant Mabe was motivated by similar retaliatory feelings against Sgt. Phillips." (Pl.'s Compl., at 8.) Plaintiff never asserts that either Defendant was prejudiced against Plaintiff because he is white, just that he violated the "white line" custom of "white males automatically protecting each other, when one of them has been rightly accused of racial discrimination by Black people." (*Id.*)

dants argue that as a matter of law, Plaintiff cannot bring a claim against them under § 1981, for two reasons: first, because Plaintiff did not have a contract with either Defendant, and second, because Plaintiff has not described any protected activity for the purpose of making a § 1981 retaliation claim. The Court will now discuss each argument in turn.

Defendants cite to *Danco, Inc. v. Wal-Mart Stores,* 178 F.3d 8, 13–15 (1st Cir. 1999) and *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018–19 (4th Cir.1999) for the proposition that the existence of a contractual relationship between plaintiff and defendant is a requirement of a § 1981 claim. However, Defendants misconstrue the findings in both *Spriggs* and *Danco.* In *Spriggs,* the Fourth Circuit only determined that at-will employment can serve as the contract for § 1981 purposes, not that the contract must be between Plaintiff and Defendant. *Spriggs,* 165 F.3d at 1018–19. In fact, the *Spriggs* decision allowed the plaintiff to sue his former employer, the company itself, along with the company's president, and plaintiff's supervisor—two parties that plaintiff did not have a contract with—for racial harassment and retaliation under § 1981. *Id.* at 1020.

■ Despite Defendants' assertions, *Danco* determined only that § 1981 does not provide a cause of action to someone who is merely affiliated with a contracting party that suffers interference with its making and enforcement of a contract, not that the contract must be between plaintiff and defendant. *Danco,* 178 F.3d at 14. In *Danco,* the First Circuit Court of Appeals ruled that an independent contractor could sue a corporate defendant under § 1981 for creating a racially-hostile environment, but that the employee of the independent contractor had no claim under § 1981 because he was not a party to the contract between the independent contractor and

the corporation. *Id.* However, in the instant case, Plaintiff *is* a party to the contract between himself and the Sheriff's Department. *See North American Roofing & Sheet Metal Co., Inc. v. Building & Construction Trades Counsel of Philadelphia & Vicinity,* No. Civ. A. 99–2050, 2000 WL 230214, at *3 (E.D.Pa. Feb. 29, 2000)(stating that "[s]omeone who is not a party to a contract, however, does not have standing to make a § 1981 claim for interference with their right to make and enforce that contract."). That Plaintiff does not have a contract with Defendant Mabe, the superintendent, and Defendant Whitt, the former Sheriff, is not important, because tortious interference by Defendants of Plaintiff's ability to contract with the Sheriff's Department satisfies the contract requirement of § 1981. *See Collin v. Rector & Bd. of Visitors of the Univ. of Va.,* 873 F.Supp. 1008, 1015 (W.D.Va.1995)(allowing claim against university dean and other faculty members who influenced a tenure decision to go forward under § 1981 and stating that, "[w]here a fellow employee intentionally interferes with the right of a coworker to make or enforce a contract with the employer and that interference is based on illegal discrimination, the employee's conduct is actionable under § 1981"); *see also Kolb v. State of Ohio, Department of Mental Retardation & Developmental Disabilities,* 721 F.Supp. 885, 891–92 (N.D.Ohio 1989)("[N]o contractual relationship or expectation of employment is required between a defendant and the plaintiff to support the individual liability under section 1981 of that defendant for discriminatory interference with the plaintiff's contractual relationship with the defendant employer.... More simply put, a third party's interference with rights guaranteed by section 1981 will subject such a person to personal liability." (internal quotations omitted)). *Danco* only addresses the existence of some contract for § 1981 purposes, and not the question of tortious

interference. Therefore, the Defendants' argument as to the necessity of a contract between Plaintiff and Defendants is not valid, because tortious interference with a contract is enough to raise § 1981 liability.

However, Defendants also argue that Plaintiff has not described any protected activity for the purposes of a § 1981 *retaliation* claim. Defendants argue that in order to make out a retaliation claim, the retaliation must be based on opposition to conduct that is itself a violation of § 1981. *See Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998)("[T]o be actionable under § 1981, the retaliation must have been in response to the claimant's assertion of rights that were protected by § 1981."); *see also Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969)(Allowing a claim under § 1982 where white appellants were "punished for trying to vindicate the rights of minorities protected by [the statute]."); *De Matteis v. Eastman Kodak Co.*, 511 F.2d 306, 312 (2d Cir.1975)(Allowing a claim under § 1981 where white appellant was "punished for trying to vindicate the rights of [non-white] minorities," in particular, selling his house to a black man, thereby vindicating the right of a fellow black employee to "make ... [a] contract"). Plaintiff must be able to identify a right under § 1981 that he vindicated with "some particularity." *See Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988)("The Section 1981 rights being vindicated by white plaintiffs must be identified with some particularity in order to limit actions under that statute to its purpose. Otherwise, non-minority plaintiffs could bring actions where Section 1981 rights are not implicated."). In Response to Defendants' arguments that Plaintiff must identify such a Section 1981 right, Plaintiff states that "Sgt. Phillips pled that he was prevented from 'giving evidence' in a federal civil rights Title VI case and that his efforts to provide equal protection for the Black students at his workplace (CCHS) was also the reason his employment contract was breached by the machinations of Defendants Mabe and Whitt." (Pl.'s Resp. Def. Mabe's Mot. Dismiss, at 10.) While equal protection rights are constitutional, they are not contractual. *See Fowler v. McCrory Corp.*, 727 F.Supp. 228, 231 n. 3 (D.Md.1989)(stating that all acts of unlawful discrimination do not constitute a breach of contract actionable under § 1981). In this instance, Plaintiff has not identified any specific right under § 1981 of a minority that Plaintiff tried to vindicate and that in turn caused Defendants to retaliate against Plaintiff. Therefore, Plaintiff's claim under § 1981 must be dismissed.

## C. 42 U.S.C. § 1983

Plaintiff alleges that Defendants are liable to him under 42 U.S.C. § 1983, based on a violation of Plaintiff's rights secured by the Fourteenth Amendment and rights to equal protection under the law. Defendants argue that ordinary allegations of retaliation do not state a claim under the Equal Protection Clause, and that to the extent that Plaintiff claims his own Equal Protection rights were violated because Fowler or Defendant Mabe allegedly violated the rights of students, Plaintiff lacks standing to bring the claim.

The Fourteenth Amendment's Equal Protection clause provides that "[n]o State shall ... deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. The Fourth Circuit has held that "[a] pure or generic retaliation claim ... simply does not implicate the Equal Protection Clause." *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir.1999) (citation omitted); *see also Watkins v. Bowden*, 105 F.3d 1344, 1354–55 (11th Cir.1997)(stating that to the extent plaintiff claims she was

dismissed based on expressive activity, that conduct arises under the First Amendment, but not under the Equal Protection Clause); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir.1996)("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.").

■ However, the *Edwards* court went on to discuss, without deciding, whether to recognize another theory of equal protection law: Whether the Equal Protection Clause is violated when a government or government official selectively enforces a policy or regulation against an individual, who is not a member of an identifiable group, merely because the government or government official harbors animosity towards the individual.[3] *Edwards*, 178 F.3d at 250; *see also Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir.1995). Under this theory of equal protection law, selective prosecution where the decision to prosecute is made in retaliation for the exercise of a constitutional right is actionable under the equal protection clause. *Esmail*, 53 F.3d at 179. In *Edwards*, that would have meant considering whether the police officer suspended for engaging in secondary employment without permission was disciplined because the defendants in that case "harbored animosity toward him personally." *Edwards*, 178 F.3d at 250. Notably, this Court may not grant a motion to dismiss unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (internal quotations

omitted). However, this Court is not required to guess at what facts may be available to support Plaintiff's claims. *See Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003)("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief."). Plaintiff alleges in his Complaint that "Defendant Whitt was angry at Sgt. Phillips" for getting involved in the school business, and that Defendant Mabe "was motivated by similar retaliatory feelings against Sgt. Phillips." (Pl.'s Compl., at 8.) Plaintiff contends that Defendants were angry with him because they believed he had secretly taped Principal Fowler and had given the tape to the School Board. Thus, while Plaintiff has sufficiently pled that Defendants harbored animosity towards him personally, Plaintiff does not state why he was fired by the Sheriff in his Complaint, other than to say it was for "pretextual reasons." As such, Plaintiff fails to plead a policy or regulation that was selectively used against Plaintiff by Defendants in violation of the equal protection clause, such as the policy against engaging in secondary employment without permission that was discussed in *Edwards*. This Court will not speculate as to what, if any, policy or regulation was selectively used against Plaintiff. Therefore, because the Fourth Circuit does not recognize generic retaliation claims based on equal protection, and because Plaintiff has not met the pleadings standards as to retaliation based on selective enforcement of a policy or regulation, Defendants' motions to dismiss Plaintiff's § 1983 claim are granted.[4]

---

**3.** This theory of liability was recognized in *Cottom v. Town of Seven Devils*, No. 1:00CV89, 2001 WL 1019410, at *7 (W.D.N.C. June 13, 2001), in which the court considered whether police attention was selectively and illegally focused on a ski resort that served

alcohol because the resort owner spoke out against police misconduct. The court ultimately found that there was no equal protection violation in *Cottom*.

**4.** Plaintiff perhaps could have been able to bring a § 1983 claim against Defendants

#### D. 42 U.S.C. § 1985

Finally, Plaintiff also alleges that Defendants are liable to him under various parts of 42 U.S.C. § 1985, based on a violation of Plaintiff's rights to "be a witness in to (sic) the United States Department of Education's investigation into an illegal, racially-hostile learning environment at CCHS, (sic) Further Defendants conspired in North Carolina for the purpose of impeding, hindering, obstructing and defeating the due course of justice in North Carolina with the intent of denying to Sgt. Phillips and the constitutionally protected interests of the African American students and parents he represented the equal protection of the laws." (Pl.'s Compl., at 10.) While Plaintiff does not specifically state in his Complaint which parts of § 1985 he alleges were violated, Plaintiff's subsequent pleadings state that he is claiming a violation of the second part of § 1985(2),[5] and a violation of § 1985(3).[6]

The portion of 42 U.S.C. § 1985(2) which is at issue here provides: "[O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal pro-

tection of the laws ..." then that person so injured may have a cause of action.

 Defendants, however, argue that Plaintiff cannot state a violation of the second part of § 1985(2), because the second part of § 1985(2) only applies to conspiracies that obstruct the course of justice in state courts, which Plaintiff does not allege. The U.S. Supreme Court determined in *Kush v. Rutledge,* 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983), that this section of § 1985 "applies to conspiracies to obstruct the course of justice in state courts." Plaintiff states in his Response to Defendant Mabe's Motion to Dismiss that he is relying on the final clause of § 1985(2). However, as Plaintiff has not pled any indication that Plaintiff was prevented from giving evidence in any state proceeding, the Court finds that Plaintiff has not met the test to bring a claim under the second section of § 1985(2). *See Roper v. County of Chesterfield,* 807 F.Supp. 1221, 1226 (E.D.Va. 1992)("In order to state a valid claim under this clause, a litigant must demonstrate some interference with 'the course of justice in state courts.' ")(quoting *Kush,* 460 U.S. at 725–26, 103 S.Ct. at 1487). As such, Defendants' motions to dismiss Plaintiff's claim under § 1985(2) are granted.

---

based on a violation of his First Amendment rights. Despite Defendants' assertion that Plaintiff is estopped from bringing such a claim based on *res judicata,* it appears to this Court that that may not necessarily be the case as the state court denied the claim based on the availability of adequate state remedy, which in turn precluded access to a free speech claim under the North Carolina Constitution. It appears to this Court that the state court did not consider the question under the U.S. Constitution. However, Plaintiff has not pled such a claim in this Court based upon the First Amendment for the apparently egregious conduct that Plaintiff has alleged as

to Defendants' activities, so this Court need not address this matter any further.

5. Plaintiff's Response to Defendant Mabe's Motion to Dismiss states that, "Here, Sgt. Phillips, relied on the final clause of § 1985(2) that requires race-based animus in the conspiracy ..." (Pl.'s Resp. Def. Mabe's Mot. Dismiss, at 16.)

6. Plaintiff concedes in his Response to Defendant Mabe's Motion to Dismiss that § 1985(1) only applies to federal officials, and since Plaintiff was a deputy sheriff, he does not qualify for protection under that statute.

Defendants argue as well that Plaintiff cannot assert a claim under 42 U.S.C. § 1985(3), which states that:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). In particular, Defendants argue that Plaintiff cannot state a § 1985(3) claim, because he is not a member of a protected class which suffered the alleged discrimination. Additionally, Defendants argue that Plaintiff cannot state a § 1985(3) conspiracy claim because Plaintiff does not allege that all of the conspira-

tors shared a prohibited animus that motivated Defendants' actions toward Plaintiff. Finally, Defendants argue that Plaintiff cannot state a § 1985(3) claim because that section creates no rights, and so Plaintiff must allege that some other defined right was violated, which Plaintiff has not done.

To state a claim under § 1985(3), under the test set forth in *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), a plaintiff must allege that a federally secured right has been invaded by the defendants, that defendants conspired to deprive plaintiff of his rights, and that the defendants' actions were motivated by a class-based invidiously discriminatory motive. *See Hicks v. Resolution Trust Corp.*, 767 F.Supp. 167, 171 (N.D.Ill.1991). Plaintiffs have "standing under § 1985 only if they can show they are members of a class that the government has determined 'requires and warrants special federal assistance in protecting their civil rights.'" *See Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir.1994)(quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536–37 (9th Cir.1992)). In *Maynard*, the Ninth Circuit Court of Appeals found that a white plaintiff who was retaliated against for assisting a black woman by complaining about irregular hiring practices had standing under § 1985 because Title VII of the Civil Rights Act of 1964 grants special protection to all employees, regardless of race, who are subjected to retaliation for assisting in the investigation of discriminatory employment practices. *Maynard*, 37 F.3d at 1403; 42 U.S.C. § 2000e–3(a); *see also Yesteryears, Inc. v. Waldorf Restaurant, Inc.*, 730 F.Supp. 1341, 1355 (D.Md.1989)(allowing white nightclub owner to bring suit under § 1985 where defendants conspired against him because nightclub was frequented by blacks). Therefore, the Court finds that Defendants' argument that Plaintiff cannot

rely on § 1985(3) because he is not a minority is without merit. However, Plaintiff still must be able to show, as in *Maynard*, that he is a "member of a protected class" that warrants special federal protection. The Court finds that Plaintiff has not done so. To the extent that Plaintiff could claim that he is part of a "whistle blower" class for trying to enforce the rights of the black students at CCHS, courts have not found that that classification possesses characteristics comparable to a "discrete and insular minority" that has been granted § 1985(3) protection because of race, national origin or gender. *Hicks*, 767 F.Supp. at 171. To the extent that Plaintiff is arguing that he is vindicating the rights of black students and their parents, Plaintiff has not shown that he is a member of that class with standing to argue for their rights. *See United States v. Hays*, 515 U.S. 737, 743–44, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995)("[E]ven if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." (internal quotation marks omitted)).

■ Furthermore, the Court notes § 1985(3) does not create any substantive rights on behalf of individuals such as Plaintiff. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979)(stating that § 1985(3) "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates"). As such, for the conduct of a state official to violate § 1985(3), the conduct must have violated an independent right granted to Plaintiff. *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). This Court has already determined, however, that Plaintiff cannot bring a generic retaliation claim based on a violation of his alleged equal protection rights. Because of this, and because of Plaintiff's failure to properly state a claim under § 1981 as the Court previously discussed, Plaintiff has not identified any violations of his independent rights. Therefore, Plaintiff has failed to plead a claim under § 1985(3), and as such, Defendants' motions to dismiss the entirety of Plaintiff's claim based upon § 1985 must be granted.

## V. CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Strike [Document # 17] Defendant Whitt's Reply is denied. Furthermore, Defendant Mabe's Motion to Dismiss [Document # 8] and Defendant Whitt's Motion to Dismiss [Document # 2] Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985 are granted. An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

### *ORDER AND JUDGMENT*

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith, IT IS HEREBY ORDERED and ADJUDGED that Plaintiff's Motion to Strike [Document # 17] Defendant Whitt's Reply is DENIED. Furthermore, Defendant Mabe's Motion to Dismiss [Document # 8] and Defendant Whitt's Motion to Dismiss [Document # 2] Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985 are GRANTED, and Plaintiff's Complaint is DISMISSED.